# City of Chicago, Defendant in Error, v. Adolph C. Brendecke, Plaintiff in Error.

## Gen. No. 15,753.

1. PENALTIES—*when complaint sufficient after verdict.* In a civil action to recover a penalty for the violation of an ordinance a complaint will be deemed sufficient after verdict if no objection to its form or sufficiency was interposed in the lower court.

2. CRIMINAL LAW—*when doctrine of unlawful entrapment does not apply.* It is not unlawful entrapment for police officers to afford to a person an opportunity to voluntarily and deliberately do what they had reason to believe he would do if opportunity offered.

3. CRIMINAL LAW—*when burden upon defendant to establish good faith.* In an action for selling morphine in violation of the provisions of an ordinance where the defense is that the sale was upon a prescription—the defendant having acted in the dual capacity of druggist and physician—the burden is upon the defendant to show that he issued the prescription and sold the morphine upon the basis thereof in good faith.

4. MUNICIPAL COURT—*when plea need not be shown by record.* In an action to recover a penalty for violation of an ordinance, the action being of the 4th class, no plea need appear if the defendant has interposed every defense available under a plea of not guilty.

5. CONSTITUTIONAL LAW—*when questions waived by appealing to the Appellate Court.* All questions involving the constitutionality of an ordinance are waived by appealing to the Appellate Court.

Action of debt. Error to the Municipal Court of Chicago; the HON. WILLIAM N. COTTRELL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed April 24, 1912, Rehearing denied May 9, 1912.

JOHN F. GEETING, for plaintiff in error.

GEORGE H. WHITE, for defendant in error; HENRY M. SELIGMAN, of counsel.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

In an action of debt in the Municipal Court by de-

fendant in error against plaintiff in error to recover a penalty for the violation of section 1470 of the Municipal Code of the City of Chicago, a trial by jury resulted in a verdict against plaintiff in error, wherein the penalty was assessed at $200, and judgment was entered on such verdict for the amount of such penalty and costs, and that plaintiff in error stand committed to the house of correction until said amount be either worked out by him at the rate of 50 cents per day for each day's work or until said amount be paid or until he be discharged, etc.

The amended verified complaint charges that plaintiff in error on April 12, 1909, at the City of Chicago "being a druggist, did unlawfully sell or give away to her, the said May Guyer, morphine, or a preparation containing morphine, without the written prescription of a licensed physician, or licensed dentist, licensed under the laws of the State of Illinois, in violation of Section 1470 of the Revised Municipal Code of the City of Chicago of 1905, as amended November 27, 1905."

The section of the ordinance in question, of which the Municipal Court took judicial notice, and which appears in the record as embodied in an instruction given to the jury, is as follows:

"No druggist or other person shall sell or give away any morphine, cocaine, hydrochlorate, or any salts, or any compound of the same, or any preparation containing cocaine, morphine, hydrochlorate, or any of the salts, or any compound thereof, except upon the written prescription of a licensed physician, or a licensed dentist, licensed under the laws of the State of Illinois, which prescription shall be filled only once and shall have upon it the name and address of the patient; provided, that the provisions of this section shall not apply to the sale at wholesale, by any manufacturer or wholesale druggist, to retail druggists, physicians, dentists or chemists of such cocaine, morphine, hydrochlorate, or any salts or compound of the same in original packages only; that such packages have affixed

thereto a label specifically setting forth the preparation of cocaine, morphine or hydrochlorate contained therein. Any person who shall violate any of the provisions of this section shall be fined not less than fifty dollars, nor more than two hundred dollars for each offense.''

This is a civil and not a criminal action. The complaint is framed in the language of the ordinance and no objections to its form or sufficiency having been interposed by the plaintiff in error in the Municipal Court, it must be held to be sufficient after verdict.

It is claimed that the section of the ordinance involved was not offered in evidence. Without here determining whether formal introduction of the ordinance was necessary, in view of the fact that the Municipal Court is authorized to take judicial notice of the ordinance of the city of Chicago, and that said section of the ordinance is recited at length in an instruction to the jury, it is sufficient to say that the claim evidently rests upon a misapprehension of the record. The record discloses that a ''book,'' which, from the references made to it by counsel, presumably contained a copy of the ordinance, was recognized and treated as properly being an exhibit in the case, and that the court particularly directed the attention of the jury to the number of the section involved.

It is admitted by plaintiff in error that on April 12, 1909, he sold to May Guyer twenty one-quarter grain morphine tablets in the drug store conducted by him at 265 West Randolph street, and the proof shows that he was then a licensed physician having a certificate dated April 22, 1885. As to what occurred at the time the sale was made, the evidence is sharply conflicting. The complaining witness, May Guyer, testified that when she went to the drug store, it was pouring rain, and upon her arrival there she was ''sopping wet,'' and was feeling ''pretty bad,'' ''kind of nervous;'' that she saw plaintiff in error behind the prescription

counter and asked him for some morphine and gum opium, saying she was feeling kind of bad, had chills and was nervous; that she was nervous because she had been in the habit of using the "stuff;" that without saying anything plaintiff in error gave her 25 cents worth of morphine and 15 cents worth of gum opium; that she did not give plaintiff in error any prescription for the drug, and he did not tell her how to take it; that plaintiff in error put the morphine tablets in a small envelope which she had in her hand as she went out of the store, and that, as she came out, police officer Clark stepped up and took the envelope from her.

Plaintiff in error testified that Mrs. Guyer came into the store and asked for cocaine, and he said, "We haven't got a grain of cocaine in the house;" that she said she had to have something to brace her up and asked if he could not give her some morphine; that he said he would sell her a couple of ¼-grain tablets if she was in need of it, and she said she was; that she looked like a morphine fiend, and was shivering and "pretty near in a state of break down;" that he felt her pulse and that she needed some, and so gave her twenty ¼-grain morphine tablets, and she swallowed three right then and there; that he made out a prescription upon a piece of yellow paper before he gave her the tablets; that he used that paper because his printed prescription blanks had not been received at the store, into which he had moved three or four days previously; that he put the number "104" on the envelope and on the prescription, and also wrote thereon his name and the name and address which Mrs. Guyer gave him, and the words "as directed." Plaintiff in error, however, did not testify that he gave Mrs. Guyer any directions as to when and in what doses she should take the morphine. Plaintiff in error further testified that he made no charge for the prescription or for his services as a physician; that he was consulted as a physician by about two patients a day; that Bauer, his

clerk, came into the store while he was looking for a prescription blank. Bauer testified that he was in the store when Mrs. Guyer came in; that plaintiff in error talked with her before he wrote the prescription; that she did not look like a morphine fiend to him; that he did not hear anything said about morphine and did not hear her say anything about her condition.

In rebuttal, Mrs. Guyer denied that plaintiff in error felt her pulse or asked for her name and address or wrote a prescription upon the occasion in question.

The envelope which contained the tablets and the paper purporting to be a prescription were offered in evidence and are in the record. Upon the face of the envelope appear the words "as directed" and the figures "12-4-09," written with lead pencil. Words and marks of identification written in ink by Officer Clark obscure other words and figures apparently written with leadpencil. The paper purporting to be the prescription written by plaintiff in error appears to be a carbon copy and bears the address "Miss Eldredge No. 341 West Madison Street," and the signature "Dr. Brendecke."

The credibility of the witnesses and the weight to be given their testimony were questions for the jury, and an examination and consideration of the evidence, as it appears in the record, warrants the conclusion that the jury properly determined the issues involved against the plaintiff in error.

Both in oral argument and printed brief it is most seriously insisted that plaintiff in error was unlawfully entrapped by the police officers to sell morphine to Mrs. Guyer, and that the verdict should, therefore, be set aside. This insistence is predicated upon the testimony of Police Inspector Edward McCann to the effect that when he was informed by Mrs. Guyer that she could get morphine from plaintiff in error, he said to Officer Clark, "Clark, this woman says she can get morphine at Brendecke's. See if she can do it,"

and that he presumed Clark would know what to do; that he believed somebody gave her money to buy it with.

Assuming the truth of McCann's testimony, which was contradicted, it wholly fails to establish a single element essential to make the doctrine of entrapment applicable to the case. The police officers had no communication whatever with plaintiff in error prior to the sale of the morphine by him. They merely afforded him an opportunity to voluntarily and deliberately do what they had reason to believe he would so do, if opportunity offered. This did not constitute unlawful entrapment, and Love v. People, 160 Ill. 501, cited by plaintiff in error, does not so hold. The cases of City of Evanston v. Myers, 172 Ill. 266, and The People v. Smith, 251 Ill. 185, are more nearly in point and conclusive against plaintiff in error.

It is urged that it does not appear in the record that any plea was entered by plaintiff in error in the Municipal Court, and hence there was no issue to try and the verdict should be set aside. This is a case of the fifth class and no written pleadings are required. Plaintiff in error appears to have interposed every defense that was available under any plea.

It is said that the court improperly permitted the witness McCann to state upon cross examination that Mrs. Guyer had told him that plaintiff in error had sent her money to go away. The question which elicited such answer of the witness was objected to as not proper cross examination, but the record (not abstracted) discloses that the witness had made the same statement on his direct examination, and that such statement was not disclaimed by plaintiff in error. The question was not subject to the objection made.

The court instructed the jury that as plaintiff in error had admitted he sold the morphine tablets in question, but interposed as a defense that he sold such tablets upon the written prescription of a licensed phy-

sician, the burden was upon him to establish such defense by a preponderance of the evidence, and further that a druggist was permitted by the ordinance to sell morphine on the written prescription of a licensed physician made in good faith, and if from the evidence they found that plaintiff in error at the time charged in the complaint was a duly licensed physician and did make out a prescription for the tablets introduced in evidence, and that such prescription was made by him in good faith as a physician, the verdict should be not guilty, but if they found from the evidence that he wrote a prescription for the complaining witness not in good faith as a physician, but as a mere device to avoid the prohibition in the ordinance against the sale of morphine, they should find him guilty.

It is conceded that the burden was on plaintiff in error to show that he was a licensed physician (Williams v. People, 121 Ill. 84; Kettles v. People, 221 Ill. 221), but it is insisted that the burden was improperly placed upon plaintiff in error to show that he sold the morphine upon a written prescription and that the question of good faith of plaintiff in error was improperly submitted to the jury. In support of his contention as to the burden of proof plaintiff in error relies upon the rule stated in Sokel v. People, 212 Ill. 238, as follows:

"It is the rule that where an act is made criminal, with exceptions embraced in the enacting clause creating the offense so as to be descriptive of it, the People must allege and prove that the defendant is not within the exceptions, so as to show that the precise crime has been committed. Where the exception is descriptive of the offense it must be negatived in order to charge the defendant with the offense, but if the exception or proviso is in a subsequent clause, or in the same one but not incorporated within the enacting clause by any words of reference, it need not be negatived but is a mere matter of defense."

Undoubtedly, the general rule is as there stated,

but the facts in this case justify the application of the recognized exception to such rule, that where the subject-matter of a negative averment lies peculiarly within the knowledge of a defendant the burden is cast upon upon him to disprove the same.    Williams v. People, *supra;* Kettles v. People, *supra.*

There is no pretense that Mrs. Guyer applied to plaintiff in error for a prescription, or that she knew he had written a prescription.    Plaintiff in error assumed to be acting in the dual role of physician and druggist, and if he, as a physician, wrote a prescription which was filled by him as a druggist, that fact was not merely peculiarly but was exclusively within his knowledge, and the burden of proof was properly cast upon him.

In its application to the facts in this case, the ordinance necessarily implies that the required prescription shall have been made by plaintiff in error in good faith.    Being both physician and druggist, it would be trifling to say that he, as a licensed physician, might write a prescription as a mere device for the purpose of enabling himself, as a druggist, to evade the ordinance.

Objections to certain questions propounded to plaintiff in error on cross examination were sustained by the court, but it is insisted that plaintiff in error was nevertheless prejudiced by the asking of such questions.    We think the rulings of the court fully neutralized any inference unfavorable to plaintiff in error which might have been raised by the questions propounded to him

It is finally urged that the judgment of the court committing plaintiff in error upon his failure to pay the debt and costs to the house of correction to labor until he worked out the debt and costs at the rate of 50 cents per day for each day's work, etc., was in contravention of the 13th amendment to the Federal Constitution, which provides:

"Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, or in any place subject to their jurisdiction."

The ordinance of the City of Chicago which authorized such judgment was enacted by the City Council in pursuance to express power conferred by the Legislature. Par. 299, Chapter 34, Statutes 1909. The constitutionality of such ordinance, therefore, directly involves the constitutionality of the statute, and this court is without jurisdiction to determine the question. Furthermore, the question was waived by prosecuting the writ of error from this court. P. C. C. & St. L. Ry. Co. v. Chicago, 242 Ill. 178.

We perceive no substantial error in the record and the judgment of the Municipal Court is affirmed.

*Judgment affirmed.*