## JOE WARREN et al. v. STATE.

No. A-6134.   Opinion Filed Dec. 4, 1926.
(251 Pac. 101.)

C. R. Reeves, for plaintiffs in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J.   The plaintiffs in error, hereinafter called defendants, were convicted in the district court of Oklahoma county of the crime of robbery with firearms, and each sentenced to a term of five years in the state penitentiary.

An unusual state of facts appears in the record. It appears that Leo Williams, now a fugitive, formed a plan for the robbery of the Big Four and the New State ice plants, and for this purpose called to his aid the defendants.   Williams imparted his plan to Cothran, an employee of the Big Four Company, and Cothran advised Anderson, the manager of that company and the county attorney, who thereupon decided to entrap Williams and these defendants.   For fear some one would be hurt in the attempt if made at the ice plant, Anderson was unwilling that the attempt be made there, and suggested to Cothran that the plan be changed so that Williams and the defendants would commit the robbery by holding up a crap game or something of that kind at Cothran's house.   Cothran suggested this change of plan to Williams, and Williams and one of the defendants went to Cothran's house the day before the robbery to look the ground over.   The following night Cothran invited two friends, Langley and James, down to his garage near his house as material for the defendants to rob, telling them they would have a poker game or shoot craps.   They did not know that any robbery was to take place, and had no connection with the entrapment. Langley and James, about 9 o'clock, came to Cothran's garage, a blanket was spread down and some money was out and the

dice game was ready to begin, when Williams and the defendants came on the scene, entered the garage, ordered Cothran, Langley, and James to put up their hands, which they did. The trio then went through the pockets of Cothran, Langley, and James and took what money they found. Defendants and Williams then were backing out of the garage when the officers appeared and arrested them. The defendants admit their participation in the affair as testified to by the officers, but contend that it was a joke, and that they did not intend to retain the money taken in the robbery, but expected to return it and participate in the game.

Complaint is first made that the court did not acquire jurisdiction of the person of defendants, for the reason that the preliminary complaint upon which the warrant was issued was not sworn to. The preliminary complaint was signed by W. V. Brown, but the jurat was not signed by the justice of the peace, but upon a motion to quash the state introduced evidence that Brown signed and verified the preliminary complaint before the justice of the peace issuing the warrant, and the failure of the justice of the peace to sign the jurat was a mere oversight. Section 30, art. 2, of the Constitution requires that probable cause shall be shown, supported by oath or affirmation, before a warrant shall issue. But, if a sworn complaint was in fact filed, showing probable cause, as the evidence here clearly shows, it is a sufficient basis for the issuance of a warrant, although the jurat of the officer administering the oath was not attached. In the case of James v. Logan, 82 Kan. 285, 108 P. 81, 136 Am. St. Rep. 105, it was held:

"If a declaration has in fact been made under oath, it is an affidavit, although no jurat be attached. The jurat is merely evidence that an oath was duly ad-

ministered, and, in the absence of a jurat, the fact may be proved by evidence aliunde."

It is next argued that, under the facts shown, no crime was committed; that the evidence discloses an entrapment and fraud perpetrated by Cothran and the officials, that the defendants were inveigled into the alleged offense under such circumstances, that there was no criminal intent as a matter of law and of fact, and that their acts do not constitute a crime; that the motion for an instructed verdict should have been sustained, citing Shouquette v. State, 25 Okla. Cr. 169, 219 P. 727.

The Shouquette Case involved a state of facts wherein the State Bankers' Association employed as a detective or stool pigeon an ex-convict named Saunders to aid in discovering and entrapping bank robbers. Pursuant to some arrangement made between Saunders and Shouquette, the Bank of Sperry was robbed. The state contended that Saunders was a mere informer and decoy. The defendant contended that he was a chief actor and instigator, who initiated and planned the robbery. An instruction covering defendant's theory was requested and refused by the trial court. This court, in reversing the case, held there was sufficient evidence under all the circumstances to require a submission of defendant's theory to the jury. The rule of law announced in that case and cases cited in support is that consent to the taking of property by one in authority to give consent is a defense to the charge of robbery, larceny, burglary, and kindred crimes, even though the taker has no knowledge of such consent and intends to commit the crime.

The turning point in this class of cases is that a decoy may be used to detect or entrap a criminal, and as such may afford an opportunity for a criminal to

commit a crime, and may be present apparently assisting in the commission of a crime, and such action on the part of the decoy will not constitute a defense. But, when the decoy first suggests, initiates, or induces the commission of the crime, or, as it is sometimes said, "artificially propagates" the crime, and thereby lures an otherwise innocent person to aid and abet him, or where the decoy himself does some act essential to the crime charged, a sound public policy will not uphold a conviction. Shouquette v. State, supra, and authorities cited; U. S. v. Healy (D. C.) 202 F. 349; City of Chicago v. Brendecke, 170 Ill. App. 25; State v. Jansen, 22 Kan. 498; Crowder v. State, 50 Tex. Cr. R. 92, 96 S. W. 934; Davis v. State, 70 Tex. Cr. R. 524, 158 S. W. 288; State v. Piscioneri, 68 W. Va. 76, 69 S. E. 375.

Applying the rule stated to the evidence presented by the record, it is apparent that Williams proposed to Cothran the robbery to be done by himself and the defendants. Cothran, for the purpose of entrapment, consented, aided, and encouraged the others; that is, he furnished the opportunity, and the defendants and Williams carried out the criminal design initiated by Williams and defendants. The information charges the robbery of James, who knew nothing of the plan and never gave his consent that his property be taken. It was taken from him under circumstances containing all the elements constituting robbery. The court fully instructed the jury on the defendants' theory. No reason is apparent why the judgment should be disturbed.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.