RAYMOND RIDER v. STATE.

No. A-8251. June 11, 1932.
(12 Pac. [2d] 552.)

394

Hughes & Dickson and Rizley & Sweet, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Texas county of the crime of larceny of domestic animals, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of two years.

Defendant argues numerous errors, but to dispose of the case it will only be necessary to consider two of them:

(1) That the court erred in overruling defendant's demurrer to the evidence and in overruling defendant's request for an instructed verdict.

Defendant was convicted upon the testimony of Bob Carter, an accomplice, a confessed thief and former convict, and Lonnie Garrett, who was employed by the prosecuting witness. Garrett testified, in substance, that he and Bob Carter were employed by Frank Lindsay to take care of some cattle and sheep; that he was invited by Carter to join him in stealing some of Lindsay's cattle; that he told Lindsay of this proposition, and that Lindsay told him to go back and join in with these boys, and that "I wouldn't get into no trouble in no way and try to catch

this boy and try to find out how it was." On cross-examination, referring to his arrangement with the prosecuting witness, Lindsay, he said: "He told me to go back down there and take those boys up and join in with them." Garrett was thus commissioned to join in with the supposed thieves in their enterprise. No doubt this is what both Garrett and the prosecuting witness understood at the time. If Garrett was only commissioned to watch and take note of what happened, without being a party to it, why did Lindsay, after telling him to join in with the thieves in the enterprise, see fit to promise Garrett that he would get into no trouble of any kind? The ordinary, obvious, and common-sense construction of the arrangement between Garrett and Lindsay is that Lindsay directed Garrett to become one of the thieves, for the time being and assured him that he would not be prosecuted therefor. And this is borne out by the conduct of the parties afterward. Garrett made the arrangement for the theft of this calf on the 18th day of March, 1931, kept the prosecuting witness and the officers posted as to the progress of the enterprise, and at the time the calf was stolen, the officers, together with the son-in-law of the prosecuting witness, were at the ranch watching these boys and followed them from the ranch in Texas to Hardesty, in Texas county

Garrett left Carter at the ranch and went to Hardesty, made the arrangements with defendant, if any were made, on the evening the calf was stolen, and not only assisted in catching and loading the calf, but actually drove the truck which conveyed it into Texas county and into the town of Hardesty, and was in possession of the calf and driving the truck at the time he and Carter were arrested.

According to Carter's testimony, there was never anything except a general understanding between him and the defendant as to stealing any cattle. Carter testified he had once stolen a calf and tried to deliver it to defendant, but he had refused to receive it. Carter had invited defendant to visit the ranch on three different occasions and defendant had promised, but never came. Finally, Carter sent Garrett to see defendant and Garrett claims to have made an arrangement to steal the calf and to have received a pistol in payment therefor; claims that defendant instructed him to deliver the calf at his brother's premises, some distance from Hardesty. Garrett claims that Carter went to the house and talked to defendant when they got there with the calf in the truck, but the officers who watched the house on both trips testified that they did not see defendant nor hear any conversation from him. The strange thing about the case is that defendant is nowhere in any manner connected with the larceny of the calf, except by the statements of Carter and Garrett. While the truck was taken to defendant's home with the calf in it, there is nothing in the record to show—aside from the testimony of Carter and Garrett —that defendant knew the truck was there or knew that the calf had been stolen.

Garrett did all these things with the knowledge and consent of the owner and after giving notice to the sheriff's force that the crime would be committed at this particular time.

This statement of fact brings the case within the rule laid down in 18 Am. L. R. 174:

"Where the owner, in person or by his duly authorized agent, suggests to the accused the criminal design, and actively urges, co-operates with, and assists the accused in the taking of the goods, such conduct amounts to a con-

sent to the taking, and the criminal quality of the act is wanting."

In Roberts v. Territory, 8 Okla. 326, 57 Pac. 840, the Supreme Court of the territory said:

"Under an indictment for burglary, if it appeared from the evidence that the entry was instigated by the occupant of the building which was burglarized, or that it was done with the knowledge and assent of the occupant, and that one of the persons engaged in the breaking and entry of the building was a detective and decoy acting with the authority of the occupant, the defendant would not be criminally liable."

To the same effect are: State v. Hull, 33 Or. 56, 54 Pac. 159, 72 Am. St. Rep. 694; McGee v. State (Tex. Cr. App.) 66 S. W. 562.

The undisputed facts that Garrett left Carter in bed at the ranch and drove to the home of defendant, in Texas county, and claimed he made a deal to sell him the stolen calf, used Lindsay's truck to transport it from the ranch into Texas county, helped load it, and was in possession of and driving the truck containing the calf when arrested with Carter, made him an active and official instigator and participant in every essential element of the alleged crime.

The court in the case of Shouquette v. State, 25 Okla. Cr. 169, 219 Pac. 727, said:

"Where one acts as a detective to entrap others in the commission of a contemplated robbery, and where he urges and induces others to join with him, and the detective himself proposes and plans the robbery, and is the chief actor in the forcible taking of the property, which would not have been taken without such inducements, to make one so induced to participate with him criminally responsible, the person so aiding such principal actor must have

participated in every ingredient of the offense charged, making as to him a complete offense, independent of the acts of the procuring detective."

"Where a private detective, in conjunction with officers of the court, acts as a decoy, and is himself the chief instigator of and performs the major part of the offense, such scheme will be deemed to be against public policy, constituting a good defense against the conviction of any who were induced to participate, and who would not have participated without such inducements."

In Warren v. State, 35 Okla. Cr. 430, 251 Pac. 101, this court said:

"Where one is charged with a crime and defends on the theory that the acts constituting an essential element of the alleged offense were instigated by officials or persons acting under their direction, the test of criminality is, Did the officers or those acting under them first suggest the commission of the criminal act or lure the accused into the commission of such acts or perform any of the essential acts constituting the offense? If so, a sound public policy will not uphold a conviction. But, if the first suggestion for the commission of the crime came from the defendant, and all of the essential acts constituting the crime were done by him, then the fact that the officers or those acting under them, for the purpose of entrapment, furnished an opportunity and lent aid in the commission of the offense less than the performing of some essential act constituting the offense, or were present with and apparently assisting in the commission of the crime, constitutes no defense."

In the body of the opinion, the court said:

"The turning point in this class of cases is that a decoy may be used to detect or entrap a criminal, and as such may afford an opportunity for a criminal to commit a crime, and may be present apparently assisting in the commission of a crime, and such action on the part of the decoy will not constitute a defense. But, when the

decoy first suggests, initiates, or induces the commission of the crime, or, as it is sometimes said, 'artificially propagates' the crime, and thereby lures an otherwise innocent person to aid and abet him, or where the decoy himself does some act essential to the crime charged, a sound public policy will not uphold a conviction"—citing numerous authorities to support the rule.

It was error, therefore, for the court to overrule defendant's request to advise the jury to acquit defendant.

(2) Defendant next contends that the court erred in refusing to give his requested instruction No. 1, which reads as follows: "Gentlemen of the Jury, you are instructed that the owner of personal property cannot, either by himself or his agent, actually participate in the commission of a crime and hold any of the parties thereto criminally liable, no matter how morally guilty they may be; therefore, in this case, if you find and believe from all the evidence, facts and circumstances, or have a reasonable doubt thereof, that Frank Lindsay, the owner of the domestic animal described in the information, did authorize one Lon Garrett to join in the theft of said domestic animal and that said Lon Garrett, in pursuance of said authorization, did actively aid in the catching, loading and transporting the animal, with the knowledge and consent of the owner thereof, then, and in that event you are instructed that the defendant, Raymond Rider, cannot be guilty of the crime of larceny as charged in the information, no matter how morally guilty he might be, and without regard as to whether or not he actually intended to engage in the commission of a crime."

The instruction requested by the defendant and refused by the court was based upon the testimony of Garrett and merely told the jury that, if Lindsay, the owner, authorized Garrett to join in the theft, and, in pursuance

of such authority, Garrett, the agent and decoy of the owner, did actively aid in the stealing of the animal, with the knowledge and consent of the owner, then they could not convict defendant, regardless of his moral guilt.

It appears from the record that, when the court overruled defendant's demurrer to the evidence and his motion for an instructed verdict, he did so upon the theory that the plan to commit the crime had been formulated between Carter and defendant prior to the entry of Garrett into the transaction. A careful examination of the record reveals no evidence, other than that of Carter, an accomplice, that in any wise tends to connect the defendant with the commission of the offense, and Carter himself says that he never, at any time, made any arrangement with defendant to sell him any particular stolen cattle, and had not agreed with him to steal the calf in question.

In Shouquette v. State, supra, the defendant requested an instruction embodying the same principle of law as in the case at bar, which was refused by the court. This court held that it was error to refuse to give such instruction.

It is elementary that a defendant has a right to have a clear and affirmative instruction given to the jury, applicable to the testimony, based on the hypothesis that it is true, when such testimony affects a material issue in the case. Shears v. State, 20 Okla. Cr. 193, 201 Pac. 816; Moore v. State, 35 Okla. Cr. 257, 250 Pac. 538; Davis v. State, 20 Okla. Cr. 204, 201 Pac. 1001.

The practice of employing one thief to catch another, by participating with him in the commission of the crime, is of doubtful propriety. It is a bad investment financially, and as a matter of public policy a conviction ought not to be upheld in a case like the one at bar, where the wit-

ness against defendant is not only the instigator of the offense, but actively participates in the commission thereof.

The instruction asked for set forth the law of the case upon defendant's theory, and the court erred in refusing to give it.

Under the evidence of the state and the authorities cited, the evidence was insufficient to establish the guilt of the defendant.

For the reasons stated, the cause is reversed.

EDWARDS, J., concurs. DAVENPORT, P. J., absent.