## HOLDEN D. ROANE v. STATE.

No. A-8541.   Dec. 8, 1933.
Rehearing Denied Feb. 27, 1934.
(29 Pac. [2d] 990.)

Hughes & Dickson and Rizley & Sweet, for plaintiff in error.

J. Berry King, Atty. Gen., and S. H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter referred to as the defendant, was convicted of giving a bribe, and sentenced to a term of two years in the state reformatory, at Granite, and to pay the cost of the prosecution.

The testimony shows that on or about the 3d day of May, 1932, A. E. Pittman and C. F. Arnot were two of the duly elected, qualified, and acting members of the board of county commissioners of Beaver county; that the defendant in this case was salesman for the Wylie-Stewart Machinery Company, Inc.; that the defendant gave to A. E. Pittman, for the use of himself and C. F. Arnot, $100 to induce them to sign a contract for the purchase of a road maintainer.

The testimony further shows that defendant came to the courthouse where Commissioners A. E. Pittman and C. F. Arnot were, and took Pittman out and gave him $100, divided into two packages of $50 each; Pittman returned, and the county commissioners went into the commissioners' room and passed a resolution agreeing to buy a maintainer from the defendant, and then Mr. Pittman advised Commissioner Davis he had been left out of the deal, that he had received $50 and Mr. Arnot had received $50; put the money down on the table, and defendant was arrested by the sheriff.  Witness Pittman stated to de-

fendant, "I am going to crook you instead of the taxpayers." Pittman also denied suggesting at any time to the defendant prior to the day he received the money and signed up for the maintainer that he had a hard campaign to make and would like to have $100, and that the defendant had agreed to give him $100.

The testimony of Commissioner Arnot is substantially the same as the testimony of Commissioner Pittman, with reference to getting the money and buying the maintainer. The sale order by which the county commissioners purchased the maintainer was introduced in evidence. On cross-examination Commissioner Pittman testified he had been having trouble with machinery salesmen trying to sell him machinery and offering inducements before he met the defendant.

The defendant, testifying in his own behalf, admitted he was a salesman for the Wylie-Stewart Machinery Company, Inc.; that some time in March, 1932, he met Mr. Pittman at his home; he called on him soliciting business.

"I advised him the kind of machinery my company was handling and sought to sell him some of the machinery handled by my company; I was at Mr. Pittman's house between the 1st and 15th of April, 1932; I talked with him about selling him a maintainer and he seemed interested; I made him a price and he said it was too high; I told him I would take it up with the company and get a better price; on the 2d day of May, 1932, I was in Grant county and was going on to Texas and Cimarron counties; I stopped at Knowles to see Mr. Davis, one of the county commissioners of Beaver county, and was informed the commissioners were still in session; I went down to the county seat; when I got there it was the noon hour; I saw Mr. Pittman in a car with one of my competitors; I did not tell Mr. Pittman I was splitting my commission with the commissioners in different counties.

"When I came to the county seat I told Mr. Pittman I would like to get his order and he said, ' How much is there in it'; I told him I could save him $135 or thereabouts; Pittman said he and Mr. Arnot would buy a maintainer together; when Mr. Pittman asked how much there was in it, I thought he wanted to know how much I could save him on the machinery. On one previous occasion I was at Pittman's house, he talked about his campaign, said he had a hard man to run against and asked if I could help him on his campaign. I asked him if he wanted a donation, and he said, yes, he would like to have $100. I went to Forgan and cashed travelers' checks at the Forgan bank, and when I came back Mr. Pittman and Mr. Arnot was sitting on the steps of the courthouse; Mr. Arnot got up immediately and went into the courthouse and Mr. Pittman came out and got into the car with me, and as we drove to the filling station I gave him the $100; we drove back to the courthouse; Mr. Pittman got out of the car, and Mr. Davis was standing by the side of the building; Mr. Pittman said, 'All the commissioners are here, if you want us to sign an order on that maintainer we will sign it up for you'; we went in a room where there were a number of people, and the order for the maintainer was signed; Mr. Pittman then laid the money I had given him on the table and said, 'I want to charge this man with bribery.' The $100 I had given to Mr. Pittman was given him to assist in his campaign, and had nothing to do with the purchasing or influencing of the commissioners to buy the maintainer."

A number of witnesses testify to the former good character and reputation of the defendant.

The defendant has assigned eleven errors upon which he relies for a reversal. The first and second assignments of error go to the question of the alleged error of the court in overruling the demurrer of defendant to state's evidence and the court's refusal to instruct the jury to return a verdict of not guilty at the close of the state's case. After reading the testimony, we hold that the demurrer was

properly overruled, as the testimony conclusively shows that the defendant gave Mr. Pittman $100 a few minutes before the order was signed.

The court cannot agree with the argument presented by the defendant that the state's evidence shows that the crime committed, if committed at all, was induced or brought about by solicitations or inducements of the county commissioners. It is clear from the testimony that the defendant desired to sell the county, through its commissioners, a maintainer, and in his zeal and desire to make the trade handed over to Commissioner Pittman $100.

The only controversy in the testimony is the question as to whether or not the money was given by the defendant for the purpose of assisting Pittman in his campaign, or for the purpose of securing a contract of sale with the commissioners for a maintainer. On this point the testimony is conflicting, the commissioner testifying it was given for the purpose of securing a contract, and the defendant testifying he gave it to Commissioner Pittman at Pittman's solicitation to assist him in his campaign; that the giving of the $100 to Pittman had nothing to do with securing the contract to sell the maintainer.

The jury is the exclusive judge of the weight of the evidence and the credibility of the witnesses, and before this court will reverse a conviction upon the ground that the verdict of the jury is contrary to the evidence, it must be found that there is no testimony in the record from which the jury could rationally conclude that the defendant was guilty, unless it appears from the record that the jury were influenced by improper motives in arriving at its verdict. This has always been the rule of this court.

Sayers et al. v. State, 19 Okla. Cr. 233, 135 Pac. 1073; Piazzi v. State, 13 Okla. Cr. 60, 161 Pac. 1176; Murnand v. State, 18 Okla. Cr. 426, 195 Pac. 787; Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901; Richards v. State, 22 Okla. Cr. 329, 211 Pac. 515.

It is urged by the defendant that County Commissioner Pittman was responsible for the defendant giving the money to him to assist him in his campaign, and that Pittman, by his action, entrapped him into giving the money. This argument would be reasonable and forceful if you could strike from the record the testimony showing that defendant appeared at the courthouse while the commissioners were in session and had a conversation with Commissioner Pittman, then went and got the money, came back, and took Pittman off by himself and delivered the money. There is not sufficient testimony in the record to show that the commissioner suggested to the defendant that he pay him any money.

It is urged by the defendant that the commissioner by his own acts entrapped and induced him to pay the commissioner $100. Webster defines "entrap" as follows:

"To catch, to entrap, to ensnare; hence, to catch by artifice; to involve in difficulties or distresses; to catch or involve in contradictions."

The turning point in this case to entrap is that a decoy may be used to detect or entrap a criminal, and as such may afford an opportunity for the crime to be committed, and may be present apparently assisting in the commission of the crime, and such action on the part of the decoy will not constitute a defense. Warren et al. v. State, 35 Okla. Cr. 430, 251 Pac. 101.

The evidence in this case fails to show that Commissioner Pittman solicited the defendant to commit the crime. On the contrary, it shows that the only part the commissioner took in the commission of the crime was to afford an opportunity for the defendant to commit the crime, and was present at the courthouse when the defendant returned from Forgan and received the money from the defendant for the sole purpose, as shown by the record, of having him arrested for giving a bribe.

The cases cited by defendant in his brief upon the question of defendant being entrapped are not in point; the facts in these cases being entirely different to the facts in this case.

The special instructions requested by the defendant were properly refused by the court, as the court's general instructions correctly stated the law applicable to the facts in the case.

There are many questions discussed by the defendant in his brief, but, after a careful consideration of the record, we hold they do not possess sufficient merit to warrant a reversal. The evidence is sufficient to sustain a conviction. After considering all the facts and circumstances in the case, the judgment is modified to one year, and, as modified, the judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.

PER CURIAM.

Petition for rehearing denied.

CHAPPELL, J. (dissenting). On the 8th day of December, 1933, this court handed down an opinion modifying and affirming this case.

At the time the original opinion was handed down, I reluctantly approved the same on account of the reduction of the punishment.

Upon the filing of petition for rehearing and reargument, I have again carefully examined the record and the evidence and am of the opinion that the petition for rehearing should be granted and the case reversed and remanded for a new trial.

The witness Pittman testified that he and Commissioner Arnot decided they would stop road machinery men from attempting to bribe them, and that they would entrap defendant and make an example of him. The witness Arnett testified to practically the same state of facts.

The defendant testified that, on his second visit to the home of the witness Pittman, Pittman advised him he was a candidate for re-election, had a hard campaign ahead of him, and needed a campaign contribution, and requested that defendant advance him $100.

The evidence of Pittman, Arnot, and defendant is that defendant was invited to meet with the commissioners on a certain Monday, when the question of the purchase of the machinery would be considered and defendant would be given an opportunity to quote prices; that defendant was not present on that day, but appeared the next day; that Pittman was sitting in another road machine man's car, talking to him; that later Pittman approached defendant and inquired if he was prepared to do what he had agreed to, and that, if he was, they would purchase a certain road maintainer from him; that Pittman told him the $100 would have to be cash on the barrel head; that defendant had no money with him, and was obliged to drive about twenty-five miles to another town to obtain the money; that on defendant's return Pittman

got in the car with him and they drove some distance, where defendant passed to Pittman the $100 in cash; that Pittman told defendant he would have to divide the money with Arnot; that during this conversation nothing was said about a bribe or the payment of this money to influence a sale of the road maintainer; that, when Pittman and defendant returned to the courthouse, they went in and the commissioners proceeded to hold a meeting; that they prepared the necessary order for the maintainer and officially purchased the same; that, when this transaction was completed, Pittman tossed fifty dollars to Arnot and took fifty for himself, telling the other commissioner he was not in on the deal; and that by previous arrangements the sheriff stepped in, arrested defendant, and took possession of the money.

This court in a number of cases has held that it is contrary to public policy to sustain a conviction where defendant is induced to commit the crime by the acts of public officers. Rider v. State, 53 Okla. Cr. 393, 12 Pac. (2d) 552; Warren v. State, 35 Okla. Cr. 430, 251 Pac. 101; Shouquette v. State, 25 Okla. Cr. 169, 219 Pac. 727.

To the same effect are: Scott v. State, 70 Tex. Cr. R. 57, 153 S. W. 871; U. S. v. Healy (D. C.) 202 F. 349; Smith v. State, 61 Tex. Cr. R. 328, 135 S. W. 154; U. S. v. Wray (D. C.) 8 F. (2d) 429.

In the case at bar, there are some significant circumstances: Pittman and Arnot were candidates for reelection. Pittman did have a hard campaign, and was defeated. At Pittman's solicitation, defendant visited him in his home to talk about this matter, rather than at the courthouse where the commissioners had their office. At the time fixed to make the deal defendant did not appear. The next day, when he did appear, he had no money with

him, and evidently did not come prepared to make any payment. Both Pittman and Arnot say they decided to entrap defendant. According to Pittman's own evidence, he asked defendant if he had come prepared to do what he agreed to. When advised by defendant that he was not prepared, Pittman told him it would have to be cash on the barrel head. Pittman waited around and postponed the meeting of the commissioners until defendant could go and procure the cash, all of which was done at the suggestion of Pittman.

It is fairly inferred from the record that Pittman expected to accept the $100 as a campaign contribution, but later concluded that it would be better for him and more likely to result in his re-election if he could convince the people of his district that he was an honest man who could not be bribed, and that having come to that conclusion, he decided to go another route wihout telling defendant that the payment was not to be a campaign contribution but a bribe to secure the sale of the road maintainer.

The record disclosing that the commission of the offense was suggested by Pittman and participated in by him—not only in receiving the money for himself, but also in receiving money for Arnot—and their statements that they decided to entrap defendant, brings the case clearly within the authorities above cited.

For the reasons stated, the petition for rehearing should have been granted and the case reversed and sent back for another trial, and the trial court required to instruct on entrapment.