## NORMAN V. CURTIS v. STATE.

No. A-10238. March 29, 1944.

(147 P. 2d 465.)

A. F. Moss, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for defendant in error.

BAREFOOT, J.  Defendant, Norman V. Curtis, was charged in the court of common pleas of Tulsa county with the crime of engaging in the practice of dentistry without first obtaining a license from the State Board of Dentistry; was tried, convicted and sentenced to pay a fine of $250, and costs, and has appealed.

This prosecution was instituted under Tit. 59 O. S. A. 1941 § 271, the pertinent portion of which is as follows:

"Any person shall be regarded as practicing dentistry within the meaning of this Act who shall hold himself out, or employ methods, in any way, representing himself as being engaged in the practice of dentistry; or who shall hold himself out in any way, or permit himself to be held

out in any way, as being able to diagnose, or profess to diagnose or examine clinical material and contract for the treating of; or treat, or profess to treat by professional instructions, or holds himself out as treating, any of the diseases or disorders or lesions of the oral cavity, teeth, gums, maxilliary bones and associated structures; or removes teeth, or repairs or fills cavities in the human teeth; or corrects, or attempts the correction of malposted teeth, or treats deformities of the jaws and adjacent structures; or furnishes, supplies, constructs, reproduces or repairs, or offers to furnish, supply, construct, reproduce or repair prosthetic dentures (sometimes known as plates), bridges or other substitutes for natural teeth, to the user or prospective user thereof; or administers anesthetics, general or local, or uses X-ray, and interprets dental X-ray films, or who offers or undertakes, by any means or methods, to remove stains or concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of same; or takes impressions of the teeth and jaws; or diagnoses, makes and adjusts appliances to artificial casts of malposted teeth for treatment of the malposted teeth in the human mouth, with or without instructions; or who owns, maintains, or operates an office or offices, by holding a financial interest in same, for the practice of dentistry. The fact that a person uses any dental degree, or designation, or any card, device, directory, poster, sign or other media whereby he represents himself to be a dentist, shall be prima facie evidence that such person is engaged in the practice of dentistry; . . . "

The case was tried before the court, a jury being waived, and upon an agreed statement of facts, which was as follows:

"It is hereby stipulated and agreed by and between the parties hereto that the following are the facts in this case bearing upon the guilt or innocence of the defendant, to-wit:

"That the United Dental Laboratory, located at 402 South Cheyenne, Tulsa, Oklahoma, is owned and operated

by the defendant, Norman V. Curtis; that on several occasions people had gone to the defendant's laboratory for the purpose of having dental plates made; that the witnesses went to the laboratory as a result of having seen an advertisement in the local paper stating that dental plates were made and sold by the above defendant; that upon inquiring of the defendant as to the plates, they were told that he would be happy to make the plates for them but it would be necessary for them to see a licensed dentist for the purpose of having the impressions made from which the plates were to be made and the defendant further suggested that there was a very good dentist just down the hall, Dr. Moore, who is and was at all times mentioned in this stipulation, a regularly licensed dentist under the laws of the State of Oklahoma; that the witnesses did contact Dr. Moore and that the impressions were made. Thereafter the impressions were taken in the laboratory of the defendant and the plates were made therefrom. The testimony will further show that a contract for the sale of the teeth was made by the defendant and the customer; that a separate contract was made by the dentist and the customer for the making of the impressions and that the customer separately paid the dentist and the laboratory for their respective services; that in each of these particular three or four cases in which the witnesses are present, the dentist was Dr. Moore but that Dr. Moore was not the only licensed dentist who took impressions from which the defendant made plates and in each instance in which the defendant has made plates, he did have in his possession, prior to the time he made such plates, a notation and impression made by a regularly licensed dentist.

"It is further stipulated and agreed that more than seventy-five per cent of the regular licensed dentists, practicing the profession in Tulsa County, State of Oklahoma, on the date of this complaint, and for many years prior thereto, take impressions exactly as Dr. Moore took the impressions in the instances referred to heretofore in this stipulation and sent the impression to Hettinger Brothers, which is a nation-wide organization, and that in the lab-

oratories of Hettinger Brothers the plates and teeth were made from the impressions taken by the dentist, exactly as in the instant case; that thereafter Hettinger Brothers returned the plates so made, to the dentist who took the impressions and the dentist collected the money from his patient and that the patient did not come in contact with and did not pay Hettinger Brothers for the plates, as made; that in all of these cases the dentist was paid by the patient and the dentist himself paid the laboratory for making the plates."

For a reversal of this case it is contended that the court erred in finding the defendant guilty, and in not finding him not guilty under the agreed statement of facts, and under the law.

Defendant's first proposition is:

"Under the rule of ejusdem generis the whole section must be construed together and the general acts denounced as the practice of dentistry are limited by all other acts so denounced."

After an analysis of the statute above quoted, defendant in his brief states:

"The single clause of the section upon which it was contended in the trial court the defendant had violated is the clause 'or supplies artificial substitutes for natural teeth.' "

He then argues that the rule of ejusdem generis precludes the application of the statute to make the defendant guilty under the statute.

In the first place, it occurs to us that there is an attempt to limit the charge as contained in the information. The real charge, as we see it, is that the defendant held himself out as a practitioner of dentistry when he had not obtained a license from the State Board of Dentistry. It is provided by the terms of the Act (Tit. 59 O. S. A. § 271), in part as follows:

"Any person shall be regarded as practicing dentistry within the meaning of this Act who shall hold himself out, or employ methods, in any way, representing himself as being engaged in the practice of dentistry; . . . or supplies artificial substitutes for natural teeth; . . . "

This language clearly relates to the supplying of dentures (commonly known as "plates"), bridges and other artificial substitutes to the user or prospective user thereof, and not to the making and delivery for a stipulated sum of such substitutes by dental laboratories for and to licensed dentists.

Tit. 59 O. S. A. 1941 § 273 prohibits persons from beginning "the practice of dentistry, or any branches thereof, without first applying for and obtaining a license for such purpose from the Board" (meaning from the Board of Governors of the Registered Dentists of Oklahoma); and section 277 of such Title prohibits persons from holding themselves out to the public "directly or indirectly, or through agents or employees, as soliciting patronage or as being qualified to practice dentistry in this State;" and section 323 of the same Title, which amended section 44, article 4, chapter 24 Oklahoma Session Laws 1935, is in part as follows:

"Any person . . . who shall practice, or attempt to practice dentistry . . . within the State of Oklahoma, . . . without having complied with the provisions of this Act, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not exceeding Five Hundred Dollars ($500.00), or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment."

From a reading of the agreed statement of facts, it is at once readily discernible that defendant, whom it is agreed is not a licensed dentist as provided by the laws of this state, is holding himself out to the public as a dentist, and is soliciting patronage, and as being qualified to prac-

tice dentistry in this state. The agreed statement says: "that the witnesses went to the laboratory as a result of having seen an advertisement in the local papers stating that dental plates were made and sold by the above defendant."

It may be observed from a reading of the whole of the agreed statement of facts, that there was an agreement and understanding between the defendant and Dr. Moore for the defendant to advertise for business in a manner contrary to the statutes of this state, and that Dr. Moore and the defendant were to receive the benefits therefrom. There can be no doubt but that there was an aiding and abetting contrary to Tit. 21 O. S. A. 1941 § 172, which is as follows:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

As to the applicability of the rule of ejusdem generis, this question is fully answered in the case of Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289, 291, where this rule is fully discussed, and the authorities fully reviewed. It was there said:

"The term 'ejusdem generis,' is recognized as a rule of construction. Its application does not change the rule that courts will endeavor to ascertain the true legislative intent in construing statutes. This legislative intent should be sought in the ordinary meaning of the words of the statute, construed in view of the connection in which they are used, and of the evil to be remedied." Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613; Semler v. Oregon State Board of Dental Examiners, 294 U. S. 608, 55 S. Ct. 570, 79 L. Ed. 1086; Harris v. State, 41 Okla. Cr. 221, 271 P. 263; Holt v. State, 51 Okla. Cr. 263, 300 P. 430; State Bar v. Retail Credit Ass'n, 170 Okla. 246, 37 P. 2d 954.

We have carefully considered the cases cited in defendant's brief and they are in accord with the principles announced in the Wilkins case.

The facts in the case of Lasdon v. Hallihan, Director of Registration and Education, 377 Ill. 187, 36 N. E. 2d 227, 230, decided September 10, 1941, are almost parallel with the facts in the instant case; and the Illinois statute is almost identical with the Oklahoma statute. The manner of procedure as related by the facts are practically the same as used by the defendant in the instant case. The court in its opinion said:

"Appellants say they do not contend that the provision of the act which requires the making of the impression and fitting and adjustments of the plate in the oral cavity to be done by a licensed dentist is not a proper exercise of legislative power, but that their objection is to the provision which prohibits them from making and offering dental plates for sale or use to the public. . . . it is argued, as a matter of statutory construction, that the dental laboratory operations as carried on by appellants did not constitute the practice of dentistry within the meaning of the act. . . . .

"In the exercise of police power the practice of the professions has been subjected to licensing and regulation for the reason that the services customarily rendered by those engaged in such professions are so closely related to the public health, welfare and general good of the people, that regulation is deemed necessary to protect such interests. It has been held a proper exercise of police power to legislate and protect the professions performing such services against commercialization and exploitation. Winberry v. Hallihan, 361 Ill. 121, 197 N. E. 552; Semler v. Oregon State Board of Dental Examiners, supra; People v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901. In the Semler case, supra, in discussing the objectives sought by the legislature of the State of Oregon in enacting the Dental Practice act of that State, the court

said (294 U. S. 608, 55 S. Ct. 572, 79 L. Ed 1086) : 'The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous.' . . .

"The facts as found by the master may not fully justify a statement that appellants designed to commercialize and exploit the profession of dentistry but there is sufficient in the record to warrant the conclusion that if the objectionable provisions of the act were removed on constitutional grounds the possibility of commercialized exploitation of the profession would be present.

"Appellants claim they have a constitutional right to advertise their business and sell their products to the public, subject only that the making of the impressions and the fitting and adjustment of the plates shall be by a licensed dentist. It is obvious that if they were permitted to thus advertise their business, the practice of the profession of dentistry would, to a great degree, be subservient to the business of those engaged in the making of plates. It is well known that masses of the public do not comprehend or understand the skill that is necessary to the making of proper dentures and the proper charges to be made for such services. Such persons are often attracted by the advertisements of the quack and charletan and seek his services.

"Appellants concede that a considerable number of their customers come to their laboratories because of the

advertisements and publicity they give to their business. They also admit that they refer many of their customers to a dentist, as a rule to one particular dentist. Dr. Hejna testified that about thirty-five per cent of his patients were referred to him by ones operating a laboratory. If the advertisement carried on by the dental laboratories was the medium that brought the customer to the laboratory, and he was sent from there to Dr. Hejna's office, it would, as to its effect upon the dental profession, be much the same as though he had come to Dr. Hejna's office in answer to an advertisement of Dr. Hejna's which is prohibited by section[s] 18 and 18b of the act. If the restrictions of which appellants complain were removed, it would permit licensed dentists receiving patients referred to them by the dental laboratories to do indirectly what other provisions of the act prohibit them from doing directly. . . .

"Appellants were not entitled to injunctive relief and the decree was correct."

See, also, Gobin and Freeman v. State, 9 Okla. Cr. 201, 131 P. 546, 44 L. R. A., N. S., 1089.

We have carefully examined and considered the case of State ex rel. Kennedy v. Lepon, 219 Ind. 1, 36 N. E. 2d 276, 277, decided September 17, 1941. In that case the Indiana Supreme Court had under consideration the Dental Practice Act of that State. The statute had the same provision as the Oklahoma and Illinois statutes, "who . . . supplies artificial teeth as substitutes for natural teeth," Burns' Ann. St. § 63-522, but also contained the following proviso: "Nothing in this act shall interfere with the performance of mechanical work on inanimate objects by any person . . . in or operating a dental laboratory." The court held that under this statute it was not unlawful for Lepon, who was operating a dental laboratory in Indiana, to sell artificial substitutes for natural teeth to the public. The court recognized the difference in the statutes when it said: "The Illinois statute

is dissimilar and the cited cases interpreting it are inapplicable." See, also, Oshins v. York et al., Florida State Board of Dental Examiners, 1942, 150 Fla. 690, 8 So. 2d 670; People v. A. A. A. Dental Laboratories, 318 Ill. App. 160, 47 N. E. 2d 371.

The registered dentists of Oklahoma filed an application for permanent injunction against this defendant doing business as the United Dental Laboratory, in the district court of Tulsa county, prior to the institution of this action. The trial of that case was upon the identical agreed statement of facts as the instant case. The trial court granted a permanent injunction, and on appeal to the Supreme Court the judgment was affirmed. Curtis v. Registered Dentists of Oklahoma, 193 Okla. 233, 143 P. 2d 427. In the opinion the court, in the syllabus, said:

"1. In construction of statutes, the legislative intent must govern, and to arrive at the legislative intent, the entire act must be considered, together with all other enactments upon the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered or supplied, to give statute effect which Legislature intended.

"2. Legislative intent in Dental Act is to protect the public from any person who might undertake to engage in the practice of dentistry without license to do so and part of its purpose is to prevent any one other than a licensed dentist supplying artificial substitutes for natural teeth to persons who would use them. * * *

"3. Person[s] who [engage] in the business of supplying artificial substitutes for natural teeth to public at large, without being licensed to practice dentistry, held himself out as being engaged in 'practice of dentistry' in violation of the Dental Act. . . .

"4. State may enact legislation to protect public from any person who might undertake to engage in the practice of dentistry without license to do so.

"5. Even though statute is penal it may be properly construed to accomplish the purpose for which it was enacted so as to obviate the evil to be remedied.

"6. Violation of statute designed to protect the public from any person who might undertake to engage in practice of dentistry without license could be properly prevented by injunction, even though statute was a penal one ..."

Finding no error in the record, the judgment of the court of common pleas of Tulsa county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.