Bobby Joe STANDRIDGE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–730.

Court of Criminal Appeals of Oklahoma.

June 6, 1985.

Rehearing Denied July 5, 1985.

---

Sweeney & Lankford, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

The appellant, Bobby Joe Standridge, Jr., was convicted of Murder in the First Degree in the District Court of Cleveland County, Case No. CRF–82–836(M). Appellant was sentenced to life imprisonment. We affirm the judgment and sentence of the District Court.

On Saturday, March 6, 1982, seventeen-year-old Tamara Carter was discovered missing from her job at Sharp's Cleaners in Moore, Oklahoma. Police investigators theorized Ms. Carter had been assaulted in the rear of the cleaners, and spirited away by her assailants. The cleaners also had been robbed. Ms. Carter was last seen at the cleaners immediately before closing time.

Ms. Carter's partially nude body was discovered the next day at Little River near Lake Thunderbird. Her blue jeans and tennis shoes were found in a culvert nearby. A subsequent autopsy revealed Ms. Carter died from asphyxia (drowing), in associa-

tion with blunt force head wounds and puncture wounds to the chest.

Appellant was linked to the crime through the testimony of Dr. Richard Glass, a specialist in bitemark analysis and interpretation. Dr. Glass testified that a highly unusual bitemark found on the victim's right breast was consistent with the bite of appellant. Dr. Glass' examination also showed appellant had a serious gum infection, and an abundance of calculus on his teeth, as well as the presence of a gastrointestial track bacteria in his mouth. Dr. Glass discovered this same bacteria and calculus deep in the victim's bite wound.

Also linking appellant to the crime was a conversation overheard by two witnesses. According to the witnesses, appellant, Michael Harmon, and Timothy Rist[1] plotted the robbery of a cleaners. According to this testimony, one of the conspirators told the others that a girl named Tammy worked at the cleaners, and it would be easy to rob. Appellant asked one of the witnesses to join in the robbery. Evidence also was adduced that Harmon was seen in the back of the cleaner's immediately before it closed on the Saturday in question.

The defense presented the testimony of Dr. Duane DeVore, an oral surgeon, who testified that inconsistencies existed between appellant's bite and the bitemark found on Ms. Carter's breast. However, Dr. DeVore conceded appellant could not be eliminated as a suspect. Appellant himself denied any involvement in the killing, and presented an alibi witness who claimed appellant was with him the day of the killing, except for two brief intervals.

An inmate from the Lexington Assessment and Reception Center testified, on rebuttal, that appellant told him "the biggest mistake [appellant] ever made was biting ... Tammy on the [breast] ... it was like leaving fingerprints."

## I.

In his first assignment of error, appellant alleges the trial court erred in admitting the testimony of Robert Simmons. It was Simmons who identified Harmon as the person he saw in the rear of the cleaners before closing. Appellant's argument is that Simmons' identification of Harmon was hypnotically enhanced and, thus, was inadmissible at trial.

■ This Court has previously considered this issue in *Harmon v. State,* 700 P.2d 212 (Okl.Cr.1985), in which we reversed Harmon's conviction for that reason. Therefore, we agree with appellant that this evidence was improperly admitted. However, reversal is not mandated here. In *Harmon v. State,* evidence of the defendant's guilt rested most strongly on Simmon's inadmissible identification; in the instant case, overwhelming evidence of appellant's guilt was proven through other sources.

Certainly, Simmons' identification of Harmon circumstantially linked appellant to the crime in that the State alleged appellant, Harmon and Rist acted in concert to rob the laundry. However, the prejudicial impact to Standridge was minimal, as Simmons testified he saw only Harmon at the scene. On the other hand, evidence presented by Dr. Glass linking appellant to the bitemark was highly persuasive evidence. Even the testimony of appellant's own expert did not eliminate him as a suspect. Appellant's statement to Lexington inmate William Breckner also was devastating. Finally, although the two witnesses who overheard appellant's conversation differed on other points, it was undisputed by one witness' testimony that appellant invited him to join the others in committing the planned robbery.

The evidence of appellant's guilt, unlike that of co-defendant Harmon, was overwhelming. Although the trial court erred in the admission of Simmons' identification testimony, we cannot say this testimony affected the jury's determination of appellant's guilt as to require reversal. *See Robison v. State,* 677 P.2d 1080 (Okl.Cr. 1984). *Accord Stafford v. State,* 669 P.2d

---

**1.** Rist was acquitted in a separate trial.

285 (Okl.Cr.1983), *remanded* on other grounds, —— U.S. ——, 104 S.Ct. 2652, 81 L.Ed.2d 359 (1984). Therefore, this assignment of error is without merit.

## II.

■ In his second assignment of error, appellant claims he was denied his right to a fair trial by the trial court's refusal to provide funds for defense employment of a bitemark expert. We disagree.

For many years, we have held that neither Oklahoma statutes nor the U.S. Constitution require funds for an indigent defendant to employ expert assistance. *See Bills v. State*, 585 P.2d 1366 (Okl.Cr.1978). *Accord Davis v. State*, 665 P.2d 1186 (Okl. Cr.1983); *Irvin v. State*, 617 P.2d 588 (Okl. Cr.1980). However, the United States Supreme Court held recently, in *Ake v. Oklahoma*, —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), that a State must provide an indigent defendant with access to "competent psychiatric assistance" to aid in the preparation of his defense, if the defendant makes a preliminary showing that his sanity at the time of the crime will be a key factor at trial.

We need not determine, however, whether the *Ake v. Oklahoma* holding extends to assistance other than a psychiatric expert. In this case, apparently after counsel's motion was overruled, the defense employed or obtained an expert, Dr. DeVore. There is no indication in the record that Dr. DeVore was unqualified, nor is there evidence that appellant was dissatisfied with Dr. DeVore's expertise. Appellant received the "basic tools" of his defense, *see Ake, supra* at 1094, and we cannot say prejudice occurred in the denial of these funds. This assignment of error is without merit.

## III.

Appellant next argues the trial court erred in allowing the testimony of Breckner, the State's chief rebuttal witness. Appellant claims Breckner's name was neither endorsed on the Information, as required by 22 O.S.1981, § 303, or provided to the defense before trial, as required by Okla.

Const., art. 2, § 20. Although appellant admits rebuttal witnesses are not subject to these provisions, he argues this evidence could have been presented in chief, and, therefore, error occurred when Breckner's name was not provided. *See O'Neal v. State*, 55 Okl.Cr. 338, 31 P.2d 886 (1934).

Our examination of the record reveals appellant offered no objection to this testimony at the time it was offered. We held early on that Section 303 may be waived by failure to object. *Graham v. State*, 45 Okl.Cr. 177, 282 P. 695 (1929). Furthermore, we have held that constitutional rights may be waived by failure to make a timely assertion. *See Ex Parte Moutaw*, 94 Okl.Cr. 377, 236 P.2d 509 (1951). This assignment of error is likewise without merit.

## IV.

Next, appellant argues the State created the danger that exculpatory evidence was destroyed by failing to properly preserve the crime scene. He maintains this potential for destruction infringed on his right to exculpatory evidence as guaranteed by the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We disagree.

■ We first observe that appellant has presented no proof that any exculpatory evidence was destroyed by police. Furthermore, appellant fails to disclose even a *hint* of bad faith on the part of police as they preserved the crime scene. We agree with the Ninth Circuit Court of Appeals that

> [i]n the absence of bad faith or connivance on the part of the government, destruction of evidence prior to trial does not necessitate reversal or modification.

*United States v. Henry*, 487 F.2d 912 (9th Cir.1973).

Appellant has failed to show any actual destruction of evidence, or anything other than diligent police work by investigators. This proposition is patently frivolous.

## V.

Appellant also claims the trial court erred in permitting the admission of several color photographs depicting the victim as she was found, and showing the various wounds discovered on the body.

In *Nuckols v. State*, 690 P.2d 463 (Okl. Cr.1984), we held the

> admission of photographs rests largely within the discretion of the trial judge, whose ruling will not be disturbed on appeal absent an abuse of discretion. *Glidewell v. State*, 626 P.2d 1351 (Okl. Cr.1981). An abuse of discretion will be found, however, when the photographs are gruesome, and their probative value is substantially outweighed by potential prejudice to the accused. *Oxendine v. State*, 335 P.2d 940 (Okl.Cr.1958); 12 O.S.1981, § 2403.

*Id.* at 470. The photographs in this case were not gruesome, and we will not say the trial court abused its discretion in permitting their admission. This assignment of error is without merit.

## VI.

Appellant also has on file before this Court an appeal from the District Court's denial, on June 24, 1984, of a motion for new trial on newly discovered evidence. We have carefully studied the record, and determine that the District Court had no authority to hear the motion, and therefore, this claim also must be rejected.

Rule 2.1 of the Rules of the Court of Criminal Appeals state, in part:

> If a motion for new trial on newly discovered evidence is filed after an appeal has been lodged in this Court ... the motion shall be filed with the Clerk of this Court.

The pleadings in this case show that the judgment and sentence was pronounced by the District Court on June 10, 1983. Appellant caused his petition in error to be filed in this Court on December 12, 1983. The motion for new trial on newly discovered evidence was filed with the District Court on May 29, 1984, nearly five months after an appeal had been lodged with this Court.

Accordingly, the trial court was without authority to entertain the motion, and this allegation must be rejected.

Based on the foregoing reasons, the judgment and sentence of the District Court should be, and hereby is, AF-FIRMED.

BRETT, J., concurs.

BUSSEY, J., specially concurring.

BUSSEY, Judge, specially concurring:

While I agree that the judgment and sentence should be affirmed, I am of the opinion that the per se exclusionary rule of post-hypnotic identification is erroneous for the reasons stated in my dissenting opinion in *Harmon v. State*, 700 P.2d 212 (Okl.Cr. 1985).