**Dwight H. WOODARD, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**Nos. F–85–461, F–85–462.**

Court of Criminal Appeals of Oklahoma.

Sept. 21, 1987.

Rehearing Denied Oct. 6, 1987.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Dwight H. Woodard, was charged, tried, and convicted in the District Court of Tulsa County of the crime of Possession of a Stolen Vehicle, After Former Conviction of a Felony. Prior to this conviction, the appellant was convicted of two counts of Uttering a Forged Instrument and was sentenced to five (5) years for each count with the five (5) years for each count suspended, subject to certain probationary rules and conditions. While on probation, the appellant violated the terms and conditions of his probation by having a stolen vehicle in his possession. At the sentencing hearing, the appellant was sentenced to twenty (20) years, and his five year suspended sentences were revoked. From this judgment, sentence and revocation, he appeals.

In the early morning hours of October 5, 1984, police officer Joe Vandiver of the Tulsa Police Department was on helicopter patrol, when he observed a person driving a vehicle in a residential area with no lights. After observing the vehicle for some time, he notified a patrol unit below, requesting that the officers check the vehicle. The officers located the vehicle, at which time the driver of the vehicle observed the police car, turned on his headlights, and sped through the city streets, attempting to evade the officers. The police continued to pursue the vehicle until the vehicle driver failed to negotiate a turn and ran into a street light pole. The officers then observed the appellant flee from the vehicle and subsequently apprehended him. Examination of the vehicle revealed a broken steering column and a screwdriver which was used to "hot wire" the vehicle. A forensic analysis also disclosed that latent fingerprints taken from the steering column and window of the vehicle belonged

to the appellant. It was later discovered that the vehicle was stolen earlier in the day from Southroads Shopping Center in Tulsa.

■ In his first assignment of error, the appellant contends that the trial court erred in refusing to grant funds with which to employ a fingerprint expert to rebut the testimony of the State's expert witness, Robert Yerton. The appellant cites *Ake v. State*, 470 U.S. 68, 106 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to support his proposition that indigent defendants must be provided with expert witnesses to rebut those experts who testify for the State. We disagree. *Ake* does not support such a broad interpretation. The rationale for the holding of *Ake* was that if those in need of psychiatric assistance were deprived of such assistance, there would be an extremely high risk of inaccuracy in resolving the issues of sanity.

In *Plunkett v. State*, 719 P.2d 834 (Okl. Cr.1986), this Court held that such a risk in other areas of scientific evidence was not necessarily present. The basis for our holding was that the scientific expert is often able to explain to the jury how a conclusion was reached, the defendant's counsel can attack that conclusion, and then the jury can then decide whether there was a sound basis for the conclusion. *Plunkett*, 719 P.2d at 839. In the instant case, fingerprint expert Robert Yerton, related to the jury how he correlated the latent fingerprints taken from the automobile to the appellant. Defense counsel attacked these conclusions with extensive cross-examination, after which the jury determined there was justification for this conclusion. Therefore, we cannot say that the appellant was denied the "basic tools" of his defense. *Standridge v. State*, 701 P.2d 761 (Okl.Cr.1985). This assignment is without merit.

■ In his second assignment of error, the appellant contends that he was deprived of due process because the trial court revoked his suspended sentence after a subsequent conviction without an additional revocation hearing. At the outset, we note that the scope of due process for a revocation hearing is not as broad as in a criminal proceeding; therefore, the due process requirement is satisfied if the proceeding is fundamentally fair. *Degraffenreid v. State*, 599 P.2d 1107 (Okl.Cr.1979). In the present case, the appellant received a preliminary hearing in compliance with the due process requirement and 22 O.S. 1981, § 991b, and was represented by counsel at the proceeding. At a subsequent hearing, the trial court decided to carry the revocation hearing along with the jury trial, since the offense forming the basis for both proceedings was the same. We also note that the record is entirely void of any objection to this procedure by the appellant. Having determined the revocation was the result of a fundamentally fair procedure acquiesced to by the appellant, we find this assignment to be without merit.

The judgment, sentence and revocation are AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., concurs in part, dissents in part.

PARKS, Judge, concurring in part and dissenting in part:

I write separately for two reasons. First, I wish to address the extent of discretionary authority that a trial court has to provide indigent criminal defendants with access to expert witnesses at public expense. Second, I believe that the trial court improperly revoked the appellant's suspended sentence.

In the instant case, prior to trial, appellant requested funds to enable him to hire a fingerprint expert to rebut or challenge the expert testimony which was to be presented by the State's fingerprint expert, Robert Yerton. In support of this motion, appellant cited *Ake v. Oklahoma*, 470 U.S. 68, 83, 105 S.Ct. 1087, 1097, 84 L.Ed.2d 53 (1985). In *Ake*, the United States Supreme Court held that when an indigent criminal defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the fourteenth amendment's due process guarantee of fundamental fairness requires a State to

assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. *Ake* was based on the belief that:

> [J]ustice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.

*Id.* at 76, 105 S.Ct. at 1093. While a State is not constitutionally required to provide indigent criminal defendants all the assistance that their wealthier counterparts might buy, fundamental fairness demands that indigent defendants be given an adequate opportunity to present their claims fairly within the adversary system by supplying them with the basic tools of an adequate defense. *Id.* at 77, 105 S.Ct. at 1094.

This Court has yet to squarely address the question of whether the holding in *Ake* extends to expert witnesses other than psychiatrists. *See Standridge v. State*, 701 P.2d 761, 764 (Okl.Cr.1985). It has recently been suggested that *Ake* should not be limited to its facts, but that once a defendant has demonstrated that a "requested expert is necessary, due process guarantees require the court to provide access to the service." *See* Note, *Criminal Procedure: The Constitutional Extent of the Adequate Tools of a Defense*, 39 Okla.L. Rev. 273, 286 (1986). By statute in Oklahoma, an indigent criminal defendant who files an application with the trial court at least twenty (20) days before trial is entitled to the services of a psychiatrist if the trial court finds that the defendant's sanity at the time of the offense is to be a significant factor in his defense at trial. 22 O.S. Supp.1985, § 1176. Section 1176 is not limited to capital cases. *Id.* Under 22 O.S. Supp.1985, § 464, the trial court is given discretion to appoint expert witnesses, in capital cases, when an indigent criminal defendant files an application demonstrating that the requested expert is necessary to the preparation of his defense. The trial court's discretion must be guided by a spirit of liberality and fairness, but it must also find that the defendant has met his burden of showing necessity. *See Stafford v. Love*, 726 P.2d 894, 896 (Okla.1986).

Insofar as the instant case involves a non-capital offense and a request for an expert other than a psychiatrist, the foregoing statutes fail to provide for a court-appointed expert witness even upon a showing of necessity. I believe that this gap in the statutory authority to appoint expert witnesses for indigent criminal defendants in non-capital cases raises serious questions with regard to equal protection and the due process requirement of fundamental fairness. *See* U.S. Const. amend. XIV; Okla. Const. art. II, § 7. It has been held that indigent criminal defendants have a constitutional right to services which are essential or necessary to an adequate defense. *See State v. Anaya*, 456 A.2d 1255, 1263 (Me.1983). The accused has the preliminary burden of showing that the services of a requested expert witness are necessary for an adequate defense; and, the determination of whether the services of an expert witness are necessary to an adequate defense is within the sound discretion of the trial judge, whose ruling will not be overturned on appeal unless the appellant clearly establishes substantial prejudice. *Id. See also United States v. Minor*, 756 F.2d 731, 737 (9th Cir.1985); *State v. Mines*, 35 Wash.App. 932, 671 P.2d 273, 275 (Wash.App.1983). *Accord State v. Reynolds*, 230 Kan. 532, 639 P.2d 461, 464 (1982). I would find that substantial prejudice exists where the defendant shows that there is a reasonable probability that, but for the denial of public funds for an expert witness, the factfinder would have had a reasonable doubt respecting guilt. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Strickland v. Washington*, 466 U.S. 668, 694–95, 104 S.Ct. 2052, 2068–69, 80 L.Ed.2d 674 (1984). The refusal of the trial court to provide funds to enable an indigent accused to obtain the assistance of an expert witness must undermine confidence in the outcome of the trial before substantial prejudice will be found to exist. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985) (evidence is material

only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different).

Bald assertions of the need for an expert witness will not suffice. At a minimum, the defendant's allegations must be undergirded with evidentiary support and particularized facts demonstrating that the requested expert witness is necessary to adequately prepare a defense. *See Caldwell v. Mississippi,* 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985). In addition, an indigent accused is not entitled to public funds to "shop around" until he finds a "hired gun" with a favorable opinion. *See Palmer v. State,* 486 N.E.2d 477, 482 (Ind.1985). A criminal defendant's right to an adequate defense "does not include a right to go on a wild goose chase at public expense." *State v. Anaya,* 456 A.2d 1255, 1264 (Me.1983).

In this case, however, the appellant failed to demonstrate that access to a fingerprint expert was necessary to adequately prepare his defense. Moreover, he has wholly failed to show that the action of the trial court undermined confidence in the outcome of his trial. In addition, this is not a case where the fingerprint match was the only evidence placing the defendant at the scene of the crime. *But see Taylor v. People,* 168 Cal.App.3d 1217, 215 Cal.Rptr. 73, 75 (Ct.App.1985). Accordingly, I concur in the affirmance of appellant's conviction for Possession of a Stolen Vehicle.

I now turn to the question of whether the trial court correctly revoked appellant's suspended sentence. I believe that the instant case falls squarely within the rule that "a suspended sentence cannot be revoked solely on the basis of a subsequent conviction which has not become final." *Linscome v. State,* 584 P.2d 1349, 1350 (Okl.Cr.1978). In *Linscome,* as in the present case, the same judge who presided over the defendant's trial for a subsequent offense proceeded to revoke his suspended sentence without having an additional hearing or a stipulation to the evidence. A judge cannot, in the course of one hearing, take judicial notice of evidence presented in

another hearing, when the parties have not stipulated to that evidence. *Id.* Accordingly, the order of the Tulsa County District Court, revoking the appellant's suspended sentence should be VACATED and REMANDED for a proper revocation hearing. For the foregoing reasons, I respectfully dissent to the affirmance of the revocation.