**Don Wilson HAWKINS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–86–441.

Court of Criminal Appeals of Oklahoma.

Dec. 28, 1994.

As Corrected Jan. 10, 1995.

Rehearing Denied April 11, 1995.

Virgil C. Black, Oklahoma City, Defense Counsel, at trial for appellant.

Gloyd L. McCoy, Asst. Appellate Public Defender, Norman, for appellant on appeal.

Robert Macy, Dist. Atty., Barry Albert, Asst. Dist. Atty., Oklahoma City, for appellee at trial.

Robert H. Henry, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION

LANE, Judge:

Don Wilson Hawkins, appellant, was tried by jury for the crimes of Murder in the First Degree (21 O.S.Supp.1982, § 701.7(B)), and Kidnapping for the Purpose of Extortion, two counts (21 O.S.1981, § 745(A)) in Oklahoma County District Court, Case No. CRF-85-6156. The jury returned a verdict of guilty on each count. For the kidnapping counts the jury imposed a sentence of life imprisonment; for the murder the jury set punishment at death. The trial court sentenced accordingly.

Twenty propositions of error are raised on appeal. These will be addressed according to the chronology in which they arose. This trial is not without error. However, none of the errors, singly or in concert, warrant reversal of judgment or modification of sentence. We affirm judgment and sentence.

On August 19, 1989, Hawkins set into motion his plan to kidnap a "rich woman" for ransom. He bought a set of handcuffs and six .38 caliber bullets from the Ace Pawn Shop in Oklahoma City. In the early evening he drove with Dale Shelton[1] to the free standing postal station at Shepherd Mall and waited. Shelton served as a lookout. Haw-

kins let the first woman to stop at the postal station get away when mall security drove by. The next woman, Linda Thompson, stopped, bought stamps, and when she got back into her 1983 Toyota Tercel, Hawkins forced his way in behind her. He handcuffed her and drove to the "big house"—his girlfriend's house at 50th Street and Bryant. Thompson's two daughters, aged eighteen months and four years, were in the back seat. Shelton drove Hawkins' car back to the "big house".

Hawkins took Thompson upstairs and ordered everyone else to stay downstairs. Shirley Pitts, Hawkins' girlfriend, took care of the little girls. While upstairs for several hours, Hawkins and Thompson discussed who might pay a ransom. Thompson changed from her blue striped sun dress into Hawkins shorts and shirt.

Hawkins then chained Thompson by the ankle with a dog chain and padlock to the loft of a barn on the property. The daughters were confined to a bedroom in the house. Shelton came to the barn sometime that night. He unchained Thompson, raped her, demanded oral sex from her, then rechained her to the loft. After he left, Chris Lovell, Pitts' nephew raped Thompson while she was chained. Thompson asked him to take her girls to their baby sitter. After Lovell left, Hawkins brought Thompson to the house to see her daughters, then rechained her in the loft. Shelton again raped Thompson. Some time after dawn Hawkins again brought Thompson to the house. She changed back into her dress, and Hawkins dragged her out of the house as she cried, "goodbye", to her crying children. Hawkins, drove Shelton and Thompson in Thompson's car toward Arkansas where, Hawkins said, they were going to let her go. When they got to Seminole, Oklahoma, Hawkins drove up to Sportsman's Lake.

While Shelton stood look-out, Hawkins took Thompson to the edge of the lake, hogtied her, and started back to the car. According to his statement to police, after real-

---

1. Dale Shelton was tried jointly with Hawkins. He was found guilty of Murder in the First Degree, two counts of Kidnapping for the Purpose of Extortion, Rape in the First Degree and Forc-

ible Oral Sodomy. He was sentenced to life imprisonment for each count, to be served consecutively. Judgment and sentence was affirmed in *Shelton v. State*, 793 P.2d 866 (Okl.Cr.1990).

izing she was a witness, he pushed her into the water, watched the terror in her eyes, and held her under until she drowned.[2] Hawkins and Shelton dragged the body into a ravine and covered it with brush.

Hawkins then drove them back to Oklahoma City. Along the way the two men threw out Thompson's shoes. They stopped to wash the car and wipe it clean of fingerprints. They parked the car, unlocked and with the key in the ignition, at a housing project in northeast Oklahoma City. A resident saw this and contacted the police the next day.

Meanwhile, Pitts and Lovell took the Thompson girls to the neighborhood of their sitter. Two neighborhood boys recognized the girls and knew where the sitter lived. Lovell told the boys to take the girls to the sitter, and then left with Pitts. The sitter contacted the Oklahoma City police who came and interviewed the neighborhood boys. The boys told them where Lovell lived. The police went to the "big house", arrested Pitts and Lovell, and found Thompson's purse in a crate by the house.

Hawkins and Shelton returned to the "big house" about this time, but saw the police cars and drove on to California. Two months later they were arrested in Sacramento. At the time he was arrested, Hawkins was in the process of stealing a car battery. He was armed with a sawed-off shotgun, phony identification, and stolen credit cards. Shelton was arrested at a nearby motel and also carried phony identification. Both men were transferred to San Diego to face other criminal charges there. Each man confessed in San Diego to the murder and kidnappings which are the subject of this case. By phone Shelton directed the Seminole County Sheriff to the location of Thompson's remains. The skeletal remains were still clad in the blue striped dress.

## PRETRIAL ISSUES

■ Appellant asserts pre-trial publicity tainted the jury panel and the trial court

erred by denying him a change of venue. While the granting or denial of a change of venue is left to the sound discretion of the trial court, that discretion is limited by the due process rights of the defendant. *See Coates v. State*, 773 P.2d 1281 (Okl.Cr.1989). Change of venue is proper when the influence of the news media, either in the community at large or in the courtroom itself pervade the proceedings, or when the entire circumstances surrounding the trial indicate the trial was fundamentally unfair. *See, Murphy v. Florida*, 421 U.S. 794, 798–99, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975) (pervades the proceedings); *Allen v. State*, 862 P.2d 487, 490 (Okl.Cr.1993) (fundamentally unfair); *see also, Brown v. State*, 743 P.2d 133, 136 (Okl.Cr.1987).

■ The jury panel seated in Appellant's case was comprised of three people who had not heard of the case prior to trial, and nine people who had heard of the case, but who had not formed an opinion of guilt. Extensive *voir dire* was conducted. Each juror who had heard of the case was examined individually in chambers. Each juror seated assured trial counsel and the trial judge that he or she would impartially decide the case on the evidence presented at trial. This is the hallmark of a fair jury panel. *Hale v. State*, 750 P.2d 130 (Okl.Cr.1988), *cert. denied*, 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988); *Kiser v. State*, 782 P.2d 405, 409 (Okl.Cr.1989). Neither the selection of the jury, nor the individual jurors themselves were tainted by the media or other circumstances of fundamental unfairness.

■ Appellant continues the venue argument claiming he was prejudiced by the release of his confession to the media by counsel for his co-defendant. The confession was aired on TV. The record does not indicate who released the tape, and we make no finding thereon. The trial court censured the release as an egregious ethical breech by both counsel and the television stations. We agree. We disagree with the appellant when he claims prejudice, however, for not one juror saw the confession on TV.

---

**2.** At trial Appellant testified he left Thompson on the bank, and, as he walked away, he heard the "shriek of a supernatural creature". He then returned and jumped in the water to try to save her.

■ In his final challenge of venue, Appellant argues he was coerced into waiving venue in Seminole County. Waiver is not the issue. When a crime is committed in more than one county, as it was here, venue is proper in either county at the State's discretion. 22 O.S.1981, § 124.

■ Relying on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), Appellant next contends the trial court denied him due process by denying his request for an investigator, or travel funds for his attorney to investigate the case. An indigent criminal defendant is entitled to any expert necessary for adequate defense upon a requisite showing of need. *Salazar v. State*, 852 P.2d 729 (Okl.Cr.1993); *Castro v. State*, 844 P.2d 159 (Okl.Cr.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993).

■ To warrant reversal on appeal, the appellant must show the lack of assistance resulted in prejudice. *Salazar, Id.* This appellant has failed to do. We find the trial court properly denied the request for an investigator or investigative funds. *See, Munson v. State*, 758 P.2d 324 (Okl.Cr.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1988).

The constitutionality of Title 22 O.S.1981, § 655, which requires co-defendants who are tried jointly to share in nine (9) peremptory challenges unless their defenses are inconsistent is next challenged. Appellant shared his peremptory challenges with co-defendant Dale Shelton. Appellant does not claim his defense was inconsistent with that of co-defendant Shelton; he challenges the statute generally on due process grounds. This argument has been soundly rejected by this Court, and we find no reason to revisit it now. *See Bryson v. State*, 876 P.2d 240, 250 (Okl.Cr.1994); *Neill v. State*, 827 P.2d 884, 887 (Okl.Cr.1992).

In a related argument Appellant asserts the trial court erred by denying his motion to sever. This issue was rejected in the opinion of the Court affirming the judgment and sentence of co-defendant, Shelton. *See Shelton v. State*, 793 P.2d 866 (Okl.Cr.1990). There is no need to reexamine this issue.

## FIRST STAGE ISSUES

We begin with four evidentiary issues. Appellant first relies on *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), *reh. denied*, 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 820 (1987) to argue the admission of character evidence regarding the victim denied him a fair trial. This argument utterly fails factually in the context of trial.

■ The testimony complained of came from Thompson's ex-husband, her uncle, and her boyfriend. The evidence challenged first concerns Thompson as a mother and the care she gave her children: feeding them well, and fencing their backyard for safety. This evidence is admissible if it is relevant, and its probative value is not substantially outweighed by its prejudicial effect. 12 O.S.1981, §§ 2401, 2402, and 2403. Relevancy, of course, depends on the issues which must be proven at trial.

■ The State charged Hawkins with two counts of Kidnapping for Extortion. To prove this charge, the State bore the burden to present sufficient evidence to show beyond a reasonable doubt Hawkins forcibly seized and confined the Thompson girls without lawful authority. *See* 21 O.S.1981, § 745. Evidence which tended to show Thompson was a careful mother was probative to the issue of Hawkins' lack of lawful authority. Any prejudice flowing from this evidence did not substantially outweigh its probative value.

■ The remaining challenged evidence consists of the fact she held a bachelor's degree from a small Minnesota college; and the fact she was, at the time of her death, a serious aerobics student. We find no trial issue which confers relevance to this evidence. However, any prejudice flowing from this evidence is so minimal, as to render its admission harmless beyond a reasonable doubt. *See Cooper v. State*, 671 P.2d 1168 (Okl.Cr.1983); *Smith v. State*, 656 P.2d 277 (Okl.Cr.1982); *Burrows v. State*, 640 P.2d 533 (Okl.Cr.1982), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1982).

The introduction of one photograph, and two photo identification card pictures taken

of Thompson while she was alive is challenged next. Again, we look to relevancy in the trial context to determine this question, for such photographs are not admissible unless relevant. *Franks v. State*, 636 P.2d 361,366 (Okl.Cr.1981); *see also Rawlings v. State*, 740 P.2d 153 (Okl.Cr.1987); *compare Staggs v. State*, 804 P.2d 456 (Okl.Cr.1991).

The photograph was used to elicit testimony from two key witnesses that Thompson was in fact the woman Hawkins brought to the "big house". This photograph is thus relevant and admissible under *Franks* and *Rawlings* for identity of this woman was a material trial issue. The photo-identification cards were found by the Oklahoma City police inside a purse found in a crate next to the garage of the "big house". Hawkins told Oklahoma City Police Detective Sellers that he put the purse of the woman he killed in a crate next to the garage at the "big house". The photo-identification cards found in that purse are thus relevant corroborative evidence, and evidence of identification. These cards were properly admitted at trial.

Appellant next challenges the finding of the trial court that his confession was voluntary and thus admissible. The trial court conducted a suppression hearing to determine voluntariness as required by *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The State bears the burden in a suppression hearing to show by a preponderance of the evidence a confession is knowing and voluntary. *Hardin v. State*, 649 P.2d 799 (Okl.Cr.1982); *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). On appeal, the trial court ruling of admissibility will be upheld if the record as a whole supports it. *Smith v. State*, 736 P.2d 531 (Okl.Cr.1987).

Sharply conflicting evidence was heard. Appellant was arrested in Sacramento and transferred by car to San Diego where he confessed. The drive to San Diego took approximately ten hours. Appellant claimed the Sacramento police coerced his confession by "stomping" on his leg irons, kicking his legs out from under him and demanding a full confession. San Diego Deputy Sheriff, Robert Rye, testified he conducted a pat-down search of Hawkins at the Sacramento County Jail when he arrived to transfer Hawkins to San Diego. He noticed no evidence of physical abuse. He also testified Hawkins said nothing about any abuse during the course of the ensuing ten hour drive. The video taped confession viewed by the trial court showed Hawkins who stated, "I want to come clean ... I just know I'm right with the Lord now". We find the trial court correctly determined Hawkins confession was voluntary.

The competency of five year old Lori Thompson to serve as a witness is next challenged. Appellant argues Miss Thompson was not able to take an oath for she could not tell right from wrong as required by 12 O.S.1981, § 2603. A child is a competent witness under Section 2603 if she (1) has personal knowledge of the matters at issue, and (2) has taken an oath or similar affirmation to tell the truth. *Gray v. State*, 650 P.2d 880, 884–85 (Okl.Cr.1982).

The trial court held an *in camera* hearing to determine Lori Thompson was competent to testify. She responded clearly to the Court's questions that she did know right from wrong, and if she did something wrong she would "get a spanking". She then promised she would only tell what was "right" and not what was "wrong". We are satisfied the trial judge correctly determined Lori Thompson satisfied the statutory requirement of affirming to tell the truth.

Appellant continues the challenge of Lori Thompson's testimony by asserting the danger of unfair prejudice and the likelihood that she misled the jury far outweighed the probative value of her testimony. This argument is not grounded in the facts. Lori Thompson testified in a straight forward manner in response to questions and without emotional embellishment. She testified, "the cowboy got in the car ..."; that he "first put handcuffs on"; that he "taked some of [her mommy's] money"; that he "started up the car and he druve (sic) to this house", and that "We had to put in the other room that wasn't with my mommy. And my mommy wanted to see us and she wanted a drink of water ..." This eye-witness testimony is

relevant, and highly probative. There is no doubt the testimony of this young child left motherless is poignant. However, we find no unfair prejudice whatsoever. The trial court properly admitted this testimony. *See Shelton v. State,* 793 P.2d 866 (Okl.Cr.1990).

■ Prosecutorial misconduct is the subject of the next proposition of error. Appellant challenges nineteen instances of alleged prosecutorial misconduct occurring in the first and second stages of trial. Fifteen of these were not objected to at trial by able defense counsel and are thus waived for all but plain error. *See Crawford v. State,* 840 P.2d 627 (Okl.Cr.1992); *Duvall v. State,* 825 P.2d 621 (Okl.Cr.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Coleman v. State,* 747 P.2d 322 (Okl.Cr.1987).

We have reviewed each of these statements and find none of them resulted in a miscarriage of justice, deprived the appellant of a substantial trial right, or had any impact whatsoever on the judgment or sentence. We find no error here. *See Staggs v. State,* 804 P.2d 456 (Okl.Cr.1991); *Ashinsky v. State,* 780 P.2d 201 (Okl.Cr.1989); *Fisher v. State,* 736 P.2d 1003 (Okl.Cr.1987).

■ Two of the statements raised on appeal were objected to at trial, and the objection was sustained by the trial court. The statements were such that the trial court thus cured any error. *Pickens v. State,* 850 P.2d 328, 341 (Okl.Cr.1993); *Armstrong v. State,* 811 P.2d 593, 599 (Okl.Cr.1991); *Walker v. State,* 781 P.2d 838 (Okl.Cr.1989).

■ The next statements challenged in this proposition were made outside the presence of the jury. These obviously had no impact on judgment or sentence.

In his final argument concerning prosecutorial misconduct, the appellant asserts the prosecutor improperly referred to other crimes evidence in opening statement, and the trial court later improperly admitted evidence of other crimes at trial. The statement and alleged other crimes evidence concerned the fact that before Linda Thompson arrived at the postal station Hawkins had started after another woman who stopped at the postal station, but she unknowingly escaped when the mall security guard approached on his rounds.

■ This is, as Appellant alleges, evidence of the crime of attempted kidnapping. It is not, however, inadmissible. As we recently explained in *Lalli v. State,* 870 P.2d 175, 177 (Okl.Cr.1994):

Where the offense charged is so connected with the other offenses as to form part of an entire transaction, evidence of other offenses may be admissible to show the character of the offense charged. (citing *Bruner v. State,* 612 P.2d 1375, 1377 (Okl. Cr.1980).

This evidence of the earlier offense is both so closely connected with the crimes against Linda Thompson and her children as to form part of an entire transaction, and very relevant to show the cold-bloodedness of the appellant's hunt for human victims. This evidence was properly admitted, and the prosecutor committed no error in referring to it in opening statement.

■ The accelerated pace of trial is the final first stage challenge. Appellant argues he was denied due process by the trial court who pressed the case forward without undue delay. The record makes clear the appellant suffered no prejudice resulting from the trial schedule. *See, Shelton v. State,* 793 P.2d at 876.

## SECOND STAGE ISSUES

Appellant's final eleven propositions of error address issues arising in the sentencing stage of trial. The jury found four aggravating circumstances: (1) the murder was committed for the purpose of avoiding or preventing lawful arrest; (2) the murder was especially heinous, atrocious or cruel; (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (4) the defendant was previously convicted of a felony involving the use or threat of violence to the person. Appellant challenges the first three.

■ Appellant first argues the State presented insufficient evidence to support the first aggravating circumstance, avoiding or preventing lawful arrest. The State must

clear two hurdles in proving this aggravating circumstance. First, it must be supported by a predicate offense committed in close proximity to the murder. *Barnett v. State,* 853 P.2d 226 (Okl.Cr.1993). Second, of course, the State must present evidence to prove the defendant's state of mind beyond a reasonable doubt. *See, Smith v. State,* 737 P.2d 1206 (Okl.Cr.1987), *cert. denied,* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1988); *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 883, 116 L.Ed.2d 787 (1991).

■ The first hurdle is satisfied in this case. Linda Thompson was a witness to the kidnapping of herself and her children. The second hurdle is cleared by the evidence. The evidence supporting this aggravator included Appellant's own statement to the police that after he left Thompson on the lake shore he returned and drowned her because he realized she was a witness and he had to "do something". Shirley Pitts testified the appellant told her he would "have to get rid of" Thompson. The evidence is amply sufficient to support the jury finding of this aggravating circumstance. *See Berget v. State,* 824 P.2d 364 (Okl.Cr.1991).

Appellant's next argument, that the continuing threat aggravator is applied in a constitutionally overbroad manner is consistently rejected by this Court. *See Sellers v. State,* 809 P.2d 676 (Okl.Cr.1991), *cert. denied,* 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991); *Boltz v. State,* 806 P.2d 1117 (Okl.Cr.1991), *cert. denied,* 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991). We reject the general argument, but examine the aggravating circumstance as applied in this case, for the appellant argues the jury was instructed inadequately.

■ The trial court properly defined this aggravator as:

"... the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

This is a correct statement of law which properly channels the discretion of the jury. *See,* 21 O.S.1981, § 701.12(7); *Fox v. State,* 779 P.2d 562 (Okl.Cr.1989); *cert. denied,* 494

U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990).

■ While the appellant does not specifically raise sufficiency of the evidence, we do note the record supports the jury's finding of this aggravating circumstance. Prior to murdering Linda Thompson, Appellant murdered a man in Denver. After murdering Thompson, Appellant went on a crime spree in California, raping two women at gun and knife point, and robbing two other women at gunpoint.

■ Appellant next challenges the constitutionality of the aggravating circumstance, heinous, atrocious or cruel, on the grounds it is overbroad and vague. Oklahoma law is well settled; this aggravating circumstance, as limited by *Stouffer v. State,* 742 P.2d 562 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1987) to those murders preceded by torture or serious physical abuse, is sufficiently channelled to satisfy constitutional constraints. *Romano v. State,* 847 P.2d 368 (Okl.Cr.1993); *Woodruff v. State,* 846 P.2d 1124 (Okl.Cr.1993); *Fisher v. State,* 845 P.2d 1272 (Okl.Cr.1993), *cert. denied,* —— U.S. ——, 113 S.Ct. 3014, 125 L.Ed.2d 704 (1992). The trial court properly instructed the jury.

■ Having found the jury properly instructed, we examine the evidence to determine whether it supports the jury's finding that the murder was in fact preceded by torture or serious physical abuse. Appellant drowned Linda Thompson. A review of capital cases in this jurisdiction indicates that when this aggravating factor is charged, and found by the jury, most often the murder is preceded by serious physical abuse. *See e.g., Woodruff v. State,* 846 P.2d at 1147; *Duvall v. State,* 825 P.2d 621 (Okl.Cr.1991), *reh. denied, cert. denied,* —— U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Williamson v. State,* 812 P.2d 384 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1991), *reh. denied,* —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1991); *Nuckols v. State,* 805 P.2d 672 (Okl.Cr.1991) *cert. denied,* 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991). No evidence of serious physical abuse, that is, gratuitous violence

inflicted on the victim beyond the act of killing, is present in this case.[3]

■■■■ We must determine, therefore, whether the evidence is sufficient to support a finding that the murder was preceded by torture of the victim. Torture in the context of the heinous, atrocious or cruel aggravator includes the infliction of great physical anguish, as can be seen in the cases cited above, or extreme mental cruelty. *See Berget v. State*, 824 P.2d 364 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992). For the same reasons the record does not support a finding of serious physical abuse, it does not support a finding of the infliction of great physical anguish. We look, therefore, to the final setting condition for a finding of torture: the infliction of extreme mental cruelty.

■■■ At the first possible instant Hawkins took this mother's helpless children away from her. While she was upstairs with him she could not know if they were safe. All that night while she was chained in the barn she could only imagine what might be happening to them. In the middle of the night he let her see them, only to take her away again. The next morning he dragged her away as she cried, "goodbye", to her babies. Hawkins subjected this mother to a most extreme form of mental cruelty. The facts of this case satisfy both the limiting instruction that the murder was preceded by torture, and the jury's finding that the murder was in fact heinous, atrocious or cruel.

■■■ Appellant next challenges the validity of the following aggravating circumstance:
The defendant was previously convicted of a felony involving the use or threat of violence to the person. 21 O.S.1981, § 701.12(1).

Appellant argues generally there exists in a capital case the potential danger that a jury might give more emphasis to the past convictions, than the present charge. The argument is not made that such was the case in his trial. Inasmuch as Appellant does not even assert any prejudice to him, we need

not go further than deny the proposition. *See Harrall v. State*, 674 P.2d 581 (Okl.Cr. 1984).

■■■ Appellant next challenges the use of unadjudicated offenses to support the aggravating circumstance of future dangerousness. Appellant recognizes the weight of authority does not support this position, and he urges the Court to reconsider its holdings. We find the use of unadjudicated offenses constitutionally permissible and appropriate to support this aggravating circumstance, and find no reason to revisit established authority. *See Williamson v. State*, 812 P.2d 384 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1991), *reh. denied*, —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1991), *Nguyen v. State*, 769 P.2d 167 (Okl.Cr.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989), *reh. denied*, 492 U.S. 938, 110 S.Ct. 27, 106 L.Ed.2d 639 (1989); *Walker v. State*, 723 P.2d 273 (Okl.Cr.1986), *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986).

Appellant continues in this vein, arguing the use of unadjudicated offenses to prove his future dangerousness denied him due process. Pursuant to the same authorities, we find no merit in this argument.

Again, arguing against the clear weight of authority, the appellant claims the trial court committed reversible error by failing to instruct the jury *sua sponte* on a presumption of life. That is, it had the option to return a life sentence regardless of the outcome of its weighing of the mitigating evidence against the aggravating factors. This Court consistently has found the criminal defendant in a capital murder case is not entitled to such an instruction. *See, Bryson v. State*, 876 P.2d 240, 263 (Okl.Cr.1994); *Paxton v. State*, 867 P.2d 1309, 1326 (Okl.Cr.1993); *Johnson v. State*, 731 P.2d 993, 1003 (Okl.Cr.1987), *cert. denied*, 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987).

■■■ Appellant argues the following statement made by the prosecutor in second stage

---

**3.** We do not consider the multiple rapes of the victim while she was held captive in the barn, for the appellant did not commit them, and the record contains no evidence to connect him to them in any way.

closing denied him a fair sentencing proceeding:

> ... Enough. [I] put on that evidence a little earlier and one of the people in the audience looked at me and said, Mr. Macy, when is it going to stop?

The trial court sustained objection by the defense, and thus cured any error at this point. See, Pickens v. State, 850 P.2d 328 (Okl.Cr.1993); Gregg v. State, 844 P.2d 867 (Okl.Cr.1992).

The prosecutor continued:

> ... There have been tears in this courtroom. Too many tears by too many people. It's time for those tears to stop and the only way those tears are going to stop are when those two reach death row. Only then would it stop and as much as I hate putting the burden on you, only you cant (sic) stop it ... We're asking a lot but it's got to stop. It's got to stop here. It's got to stop now.

■ Defense counsel objected to this statement, but waited to do so until the jury had been excused. Failure to object in a timely way has waived all but plain error. See Fulbright v. State, 508 P.2d 688, 693 (Okl.Cr:1973). To determine whether plain error is present, we look for error which resulted in a miscarriage of justice or which deprived the defendant of a substantial right. Ashinsky v. State, 780 P.2d 201 (Okl.Cr. 1989); Fisher v. State, 736 P.2d 1003 (Okl.Cr. 1987).

■ There is no doubt the prosecutor improperly attempted to evoke sympathy and societal alarm by these remarks. In this case, however, where evidence to support the death sentence was overwhelming, we do not find the prosecutorial misconduct to have resulted in a miscarriage of justice, or to have deprived the defendant of a substantial right.

Appellant instructed his trial counsel to present nothing on his behalf during the second stage: no opening statement, no mitigating evidence, no closing argument. On appeal he argues that by acquiescing to his demand trial counsel denied him effective assistance, and that by allowing trial counsel to present nothing the trial court allowed him to commit "state sanctioned suicide".

We have rejected similar arguments in the past. See, Fisher v. State, 739 P.2d 523,525 (Okl.Cr.1987), cert. denied, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1987), reh. denied, 487 U.S. 1246, 109 S.Ct. 3, 101 L.Ed.2d 955 (1987) (evidence and argument); Moore v. State, 736 P.2d 161 (Okl.Cr.1987), cert. denied, 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987) (argument). We find no reason to reconsider the issue at this time.

■ Continuing the argument, Appellant asserts the trial court failed to create a sufficient record to support his waiver of counsel and closing argument in the second stage. Our reading of the record shows the trial court established on the record that the defendant agreed to the very limited participation of his defense counsel during the second stage. We find no error here.

■ In the next argument Appellant claims the accumulation of error in this case warrants reversal of judgment or modification of sentence. When weighed against the overwhelming evidence supporting guilt and the sentence of death, the error present in this trial is harmless beyond a reasonable doubt.

■ We decline to reach the merits of the next argument in which appellant asserts his sentence is disproportionate and excessive to sentences imposed in similar cases. The Court no longer engages in proportionality review. See Smith v. State, 737 P.2d 1206 (Okl.Cr.1987), cert. denied, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); Foster v. State, 714 P.2d 1031 (Okl.Cr.1986), cert. denied, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986).

■ Rather, as a final analysis, pursuant to 21 O.S.Supp.1987, § 701.13(C), the Court must determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and (2) whether the evidence supports the jury's finding of a statutory aggravating circumstance enumerated in 21 O.S.1981, § 701.12. As set forth in this opinion, the evidence supported the jury's finding of four

aggravating circumstances. The appellant put forth no mitigating evidence. We find the sentence of death is supported by the evidence of this case, and was not driven by the influence of passion, prejudice, or any other arbitrary factor. Finding no error warranting reversal or modification, judgment and sentence is affirmed.

CHAPEL and STRUBHAR, JJ., concur.

LUMPKIN, P.J., specially concurs.

JOHNSON, V.P.J., concurs in the vote of LUMPKIN, P.J.

LUMPKIN, Presiding Judge, specially concurring.

I concur in the Court's decision to affirm the judgment and sentence in this case. However, the Court repeats an error committed in *Salazar v. State*, 852 P.2d 729, 735 (Okl.Cr.1993) regarding the scope of the right to expert witnesses. The Court in *Salazar* incorrectly stated "[p]ursuant to *Ake v. State*, 778 P.2d 460, 464 n. 1 (Okl.Cr.1989), an indigent defendant is entitled to any expert 'necessary for an adequate defense.' See *Washington v. State*, 836 P.2d 673 (Okl.Cr. 1992)." Id. A review of the citation to *Ake* reveals the footnote cited is not a holding by this Court but only a personal comment by the author of the opinion. In *Washington* the Court noted in passing the decision in "*Ake v. Oklahoma* dealt specifically with psychiatric experts, but did not preclude the possibility that the principles of *Ake* should be extended to include any expert which is 'necessary for an adequate defense'." 836 P.2d at 674. The Court found a proper showing had been made for psychiatric expert witness assistance but limited its decision to a determination that a proper showing of need had not been made for other experts. Therefore, our current jurisprudence has not been extended to "any expert necessary for an adequate defense". We must guard against an improvident extension of a rule of law through a generalized use of syntax held out to be a decision of the Court when in fact it is mere dicta enunciated by one judge's perspective on a particular issue. While this Court might ultimately reach the

decision ascribed to a prior Court, that decision has not yet been rendered.

Further, our jurisprudence does not even support the use of the analysis that an indigent defendant is entitled to any expert necessary for an adequate defense when determining whether a defendant is entitled to state funds for an expert witness. In *Munson v. State*, 758 P.2d 324, 330 (Okl.Cr.1988) this Court stated:

Appellant relies primarily on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). *Ake*, however, has not been extended to include investigative or expert assistance other than a psychiatrist. See *Woodard v. State*, 743 P.2d 662, 664–67 (Okla.Crim.App.1987); *Standridge v. State*, 701 P.2d 761, 764 (Okla.Crim.App.1985). After *Ake*, the United States Supreme Court declined to specify what, if any, showing would entitle an indigent accused to investigative or other expert assistance, finding no deprivation of due process where the defendant "offered little more than undeveloped assertions that the requested assistance would be beneficial...." *Caldwell v. Mississippi*, 472 U.S. 320, 324, [n. 1], 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985). Most recently, only Justices Marshall and Brennan have agreed to confront the issue of "whether and when an indigent defendant is entitled to non-psychiatric expert assistance." *Johnson v. Oklahoma*, 484 U.S. 878, [880], 108 S.Ct. 35, 37, 98 L.Ed.2d 167 (1987) (Marshall, J., dissenting to certiorari denial, joined by Brennan, J.). It has been held that the effective assistance guarantee of the due process clause requires a reversal on appeal from a denial of such assistance "only where a defendant has established prejudice by clear and convincing evidence." *Mason v. Arizona*, 504 F.2d 1345, 1352 (9th Cir.1974), *cert. denied*, 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed.2d 412 (1975). Here, we cannot say appellant has demonstrated substantial prejudice from the lack of the foregoing expert and investigative assistance. See *Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987).

In *Shelton v. State,* 793 P.2d 866, 873–874 (Okl.Cr.1990), Appellant's co-defendant, the Court applied the following analysis:

> Relying on *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), Appellant next contends the trial court denied him due process by refusing to either appoint an investigator to assist with his defense or grant his attorney travel funds to be used for investigation of his case. *Ake* requires that the trial court appoint a psychiatrist or psychologist to assist with the defense when a defendant makes an *ex parte* preliminary showing to the trial judge that his sanity is likely to be a significant factor at trial. 470 U.S. at 83, 105 S.Ct. at 1096. In this case, Appellant did not attempt an insanity defense. In *Standridge v. State,* 701 P.2d 761 (Okl.Cr. 1985) this Court left open the question whether the *Ake* holding extended to assistance other than a psychiatric expert. Subsequently, this Court has held *Ake* does not mandate the appointment of an investigator. *Vowell v. State,* 728 P.2d 854 (Okl.Cr.1986). In *Castro v. State,* 745 P.2d 394, 399 (Okl.Cr.1987) *cert. denied* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988) we held the trial court did not err in denying defendant's pre-trial motion for expense money in order to continue to interview witnesses and prepare for trial. In the instant case, Appellant has not demonstrated he was denied access to evidence which is material to either guilt or punishment. Appellant has failed to show substantial prejudice from the lack of these requested funds and the appointment of an investigator. We find the trial court properly denied Appellant's request for an appointed investigator and travel funds. *See Munson v. State,* 758 P.2d 324 (Okl.Cr. 1988), *cert. denied* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989).

I find the evidence supporting the especially heinous, atrocious or cruel aggravator more substantial than enunciated by the Court. The victim was chained in the barn and repeatedly sexually violated over an extended period of time. This constituted both physical abuse and torture in addition to the extreme mental cruelty outlined by the Court relating to the anguish inflicted on the victim regarding not only the safety of her children, but the realization she would not see them again. The Court should consider all of the evidence leading to the ultimate taking of the victim's life. It is for this reason I find the record also supports a finding of serious physical abuse as set forth above and also evidenced by the victim being hog-tied, pushed into the lake and held down in the water, struggling for her last breath of air. The Appellant confessed to police he watched the terror in her eyes as she drowned. This is a case which contains overwhelming evidence of an especially heinous, atrocious or cruel murder.